# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1515

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Jason Thomas Haslip, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 13, 2004
Filed: August 2, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Jason Thomas Haslip (Haslip) appeals his convictions and sentences. In April 2003, the government filed a superceding indictment charging Haslip with three counts, including one count of conspiracy to distribute, and two counts of aiding and abetting possession with intent to distribute ecstasy and methamphetamine. A jury found Haslip guilty on all counts, and the district court[1] sentenced him to 324 months' imprisonment and five years' supervised release. Haslip claims the district court

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

erred (1) in failing to give a multiple conspiracy jury instruction, and (2) in calculating drug quantity at sentencing by including a precursor chemical (pseudoephedrine) a co-conspirator attempted to purchase for manufacturing methamphetamine. Finding no errors below, we affirm.

## I.    BACKGROUND

On March 30, 2001, U.S. Customs agents intercepted an Airborne Express package mailed from Toronto, Ontario, to Minneapolis, Minnesota, which agents suspected contained the controlled substance ecstasy. Agents sent the package on to Minneapolis, where, upon arrival, customs agents installed a tracking device. Posing as an Airborne Express employee, a customs agent delivered the package to a residence located at 3422 Grand Avenue in Minneapolis. Co-conspirator Marcus Ian St. James (St. James) signed for the package. When St. James attempted to leave the residence with the package, agents stopped and arrested him. After giving a police interview, St. James agreed to cooperate by telephoning Haslip, who came to the residence and retrieved the controlled package.

Police officers followed Haslip to a residence located at 4302 Portland Avenue South in Minneapolis, which was owned by Timothy Ehrmann (Ehrmann). The officers then obtained a search warrant. While executing the search warrant, the officers discovered a locked safe, inside of which was a piece of Tupperware containing 28.1 grams of methamphetamine. Haslip was arrested, and his fingerprints were later identified on the Tupperware container.

In June 2002, Arizona Highway Patrol troopers stopped and arrested co-conspirators Ehrmann and Eugene Blaylock (Blaylock). During a vehicle search, the troopers found paper and electronic drug ledgers with entries marked for "Jason H." A few days later when co-conspirator Jimmie Orr (Orr) was arrested in Phoenix, Arizona, officers discovered more drug ledgers containing numerous entries for "Jason Haslip."

In August 2002, Haslip was in West Hollywood, California, when law enforcement officers observed Haslip making a drug sale from inside a car bearing Minnesota license plates registered to Ehrmann. After Haslip was arrested, officers searched the car and found five Ziplock baggies containing methamphetamine, ecstasy, cocaine, and ketamine, as well as an electronic scale and $1200 in currency. Haslip told officers his permanent address was 4302 Portland Avenue South in Minneapolis.

Following his arrest in California, Haslip moved to Las Vegas, Nevada. In October 2002, Haslip attempted to purchase two pounds of methamphetamine for Ehrmann from a supplier named Timothy Range (Range). Range could supply only one pound of methamphetamine, which he gave to Haslip along with a $10,000 refund. The following month, Haslip gave Range $20,000 with instructions to purchase two pounds of methamphetamine and ship the drugs to Minnesota. On December 30, 2002, Las Vegas police raided Range's apartment and seized drugs and $16,085 in currency.

On April 1, 2003, the government filed an eight-count superceding indictment charging Haslip and five others with conspiracy to distribute in excess of 500 grams of methamphetamine and ecstasy. Haslip also was charged with two counts of aiding and abetting possession with intent to distribute ecstasy and methamphetamine on April 3, 2001. Initially, Haslip pled guilty to the aiding and abetting charges, but later the district court granted Haslip's motion to withdraw his plea. Thereafter, Haslip and four co-defendants proceeded to trial.

At trial, Orr, Range, and another unindicted co-conspirator, Anthony Florian, testified to Haslip's pivotal involvement in the narcotics conspiracy. At sentencing, the district court found Haslip accountable for all of the drugs and the precursor chemical attributable to the conspiracy, assessed a total offense level of 38 and a criminal history category of IV, which resulted in a Guidelines' range of 324 to 405

months. The district court sentenced Haslip to 324 months' imprisonment on each of Counts 1 and 3, 240 months on Count 2, five years' supervised release on Counts 1 and 3, and three years' supervised release on Count 2, with all prison and supervised release terms running concurrently.

On appeal, Haslip alleges two errors. First, he claims the district court erred in refusing to give a multiple conspiracy instruction when the evidence adduced at trial established multiple conspiracies. Second, Haslip contends the district court clearly erred at sentencing in finding Ehrmann's attempt to manufacture methamphetamine was foreseeable to Haslip and including the precursor chemical amount in the drug quantity determination.

## II.   DISCUSSION
### A.   Single or Multiple Conspiracies

Haslip argues the evidence adduced at trial established at least three conspiracies: a conspiracy to distribute methamphetamine, a conspiracy to distribute ecstasy, and a conspiracy to manufacture methamphetamine. For purposes of this appeal, Haslip admits he played various, changing roles in the first two conspiracies, but contends he had no involvement in the third conspiracy to manufacture methamphetamine. Because multiple conspiracies existed, Haslip argues he was prejudiced substantially by the court's failure to give a multiple conspiracy instruction.

Upon reviewing the multiple conspiracy instruction which Haslip requested that the district court give, we note the proposed instruction did not allege Ehrmann's purchase of a precursor chemical was part of a separate conspiracy to manufacture methamphetamine. Instead, the proffered instruction suggested the possibility of two, not three, conspiracies: the first between Haslip, St. James, and Ehrmann to aid and abet the possession of ecstasy with intent to distribute, and the second between Ehrmann, Robert Cowan Thomas, Blaylock, and Orr to aid and abet the possession

-4-

of methamphetamine. Haslip's multiple conspiracy argument on appeal rings of Monday morning quarterbacking.

We review de novo the legal question whether sufficient evidence was adduced at trial to sustain a multiple conspiracy instruction, and we review for clear error the factual question whether the government proved a single or a multiple conspiracy. United States v. Contreras, 283 F.3d 914, 916 (8th Cir. 2002). We review the denial of a request for a multiple conspiracy jury instruction for abuse of discretion. See United States v. Gary, 341 F.3d 829, 834 (8th Cir. 2003). If the evidence supports a finding of multiple conspiracies, we will reverse a conviction for failure to give a multiple conspiracy instruction only when the failure to give the instruction causes substantial prejudice to the defendant. United States v. Haren, 952 F.2d 190, 196 (8th Cir. 1991).

The government may prove a single conspiracy "where the defendants have a common purpose" and where "mutual dependence or assistance" exists or each defendant is aware of the nature and scope of the conspiracy and willingly joins. Id. In a drug case, the fact that different individual defendants contributed a portion of the total drugs to suppliers or participated in numerous separate transactions does not convert a single conspiracy into multiple conspiracies. United States v. Spector, 793 F.2d 932, 935 (8th Cir. 1986). That co-conspirators may change roles throughout the pendency of a conspiracy or even depart from the conspiracy which may signal only that the single conspiracy has moved to a new phase, and a conspiracy may have multiple and varied phases. United States v. Davis, 882 F.2d 1334, 1342 (8th Cir. 1989).

In this case, the government adduced sufficient evidence Haslip knowingly and willingly gave mutual assistance to the single conspiracy charged in the superceding indictment. The government established Haslip knew his co-conspirators and lived with several co-conspirators in Ehrmann's house, where multiple drug transactions

occurred. In April 2001, Haslip picked up the controlled package containing a substantial quantity of ecstasy from St. James. Later that same day, the police searched Ehrmann's house and found a piece of Tupperware in a bedroom safe containing 28.1 grams of methamphetamine and bearing Haslip's fingerprints. At trial, Orr, a co-defendant, testified that, during the summer of 2002, Haslip traveled to Arizona with Ehrmann to purchase a large quantity of methamphetamine, which they shipped back to Minneapolis for distribution. In the fall of 2002, Haslip moved to Las Vegas, where Haslip and Ehrmann attempted to make multi-pound purchases of methamphetamine from Range. On the first occasion, Range could procure only one pound of methamphetamine and refunded Haslip $10,000 for the second pound he could not procure. Considering Haslip's close and continuous relationship with Ehrmann coupled with Haslip's direct knowledge of the difficulties Ehrmann was encountering in procuring a continuous methamphetamine source, a jury could reasonably view Ehrmann's attempted purchase of a precursor chemical (pseudoephedrine) for use in making methamphetamine not as part of a separate conspiracy, but rather as a new phase of an ongoing drug conspiracy. See id.

Viewing the evidence in the light most favorable to the jury verdict, as we must, Contreras, 283 F.3d at 916, we conclude the government adduced substantial evidence of Haslip's ongoing conspiratorial involvement in possessing both ecstasy and methamphetamine with the intent to distribute. The failure to give a multiple conspiracy instruction also did not cause Haslip substantial prejudice. As such, the district court did not abuse its discretion in refusing to instruct the jury on multiple conspiracies. See United States v. Underwood, 364 F.3d 956, 966 (8th Cir. 2004).

### B. Drug Quantity

Haslip also assigns as error the district court's drug quantity calculation that included 1,360.8 grams of pseudoephedrine, a methamphetamine chemical precursor, which co-conspirator Ehrmann attempted to purchase from a DEA agent in San Diego, California, in February 2003. Haslip argues he conspired to distribute

methamphetamine, but he did not conspire to manufacture methamphetamine. Haslip contends Ehrmann's attempted purchase of a precursor chemical (1) was not in furtherance of the conspiracy to distribute methamphetamine, and (2) was not foreseeable.

"A defendant convicted of conspiracy is properly held accountable for all reasonably foreseeable acts and omissions of any co-conspirator taken in furtherance of the conspiracy." United States v. Mickelson, 378 F.3d 810, 821 (8th Cir. 2004) (quoting United States v. Atkins, 250 F.3d 1203, 1211-12 (8th Cir. 2001)). Thus, the district court could consider amounts from drug transactions in which Haslip was not directly involved, so long as those drug transactions were part of the same course of conduct or scheme. Id. at 821-22. Before attributing the precursor chemical to Haslip, the court must find, by a preponderance of the evidence, Ehrmann's activity in procuring the precursor chemical was in furtherance of the conspiracy, and was either known to Haslip or reasonably foreseeable to him. Id. at 822.

At sentencing, the district court correctly considered all of the transactions in which Haslip was involved and those he could reasonably foresee. The court declared that "[g]iven the quantities involved here and the depth and breadth of the involvement of the conspiracy, and in particular, the prime conspirator [Ehrmann] with whom Mr. Haslip was involved, I find that the possession of the precursor chemical was foreseeable as that concept is used in the law of conspiracy." Reviewing the record, we conclude the district court's finding was not clearly erroneous.

### C.   Booker Error

Haslip also filed supplemental briefs requesting the court review his convictions and sentences in light of United States v. Booker, 125 S. Ct. 738 (2005). Although Haslip objected to drug quantity at sentencing, his objection was not based on a Sixth Amendment challenge. Therefore, we review Haslip's Booker challenge

only for plain error. United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). "Plain error is error that is 'plain' (that is, clear or obvious), 'affects substantial rights' (that is, prejudicial) and 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Rashid, 383 F.3d 769, 775 (8th Cir. 2004) (quoting United States v. Olano, 507 U.S. 725, 732-37 (1993)).

The first two factors are satisfied. Pirani, 406 F.3d at 550. However, Haslip has not established the concurrent sentences imposed by the district court affected his substantial rights. If the district court had not included the precursor chemical in Haslip's drug calculation, his adjusted base offense level would have been reduced by two levels, from 38 to 36, which, when combined with a criminal history category of IV, would yield a Guidelines range of 262 to 327 months. The district court ultimately sentenced Haslip concurrently on Counts I and III to 324 months, which falls within this range. Haslip has failed to show "a reasonable probability" the district court would have imposed more favorable sentences under the advisory sentencing Guidelines regime mandated by Booker, id. at 551, and we find no reason to exercise our discretion to remand for resentencing, Johnson v. United States, 520 U.S. 461, 467 (1997).

III. **CONCLUSION**

Finding no error below, we affirm Haslip's convictions and sentences.

_____