# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3645

_____

United States of America,

*Plaintiff - Appellee,*

v.

Antonio Laregus Robertson,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 22, 2017
Filed: March 6, 2018

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Antonio Robertson of conspiracy to possess and distribute 100 grams or more of phencyclidine ("PCP") and conspiracy to commit money laundering. The district court sentenced Robertson to 252 months' imprisonment. Robertson appeals his convictions and sentences. We affirm the convictions but remand for a correction to Robertson's sentence on the money laundering count.

I.

During a routine traffic stop in 2008, Kansas state troopers discovered a large quantity of PCP in a rental car bound for Kansas City, Missouri. The driver of the vehicle was transporting PCP to a man named Walter Sorrells. Investigation showed that Sorrells repackaged PCP for distribution in one-gram, two-ounce, and eight-ounce quantities. A cooperating witness explained how Sorrells referred to each of these quantities. Sorrells sold one-gram quantities of PCP in packages of More brand cigarettes dipped in PCP; these were known as "dips." Sorrells also packaged two ounces, or 47.2 grams, of PCP in reused vanilla extract bottles, referred to as a "red tops." Sorrells distributed eight-ounce quantities, or 198 grams, of PCP in lemon and lime juice bottles, referred to as "yellow tops" and "green tops." Sorrells transferred PCP to people who would sell the drug and pay him the proceeds.

After obtaining a wiretap on Sorrells's phone, the government intercepted several narcotics-related phone calls and text messages between Sorrells and Robertson during the summer of 2011. An investigating officer testified that drug traffickers often spoke in code when referring to narcotics. On July 21, for example, Robertson requested and received one "CD" from Sorrells. On July 22, he requested a "ticket," and arranged to meet Sorrells at a QuikTrip gas station.

On July 25, Robertson requested four "green jolly ranchers," or "green ones," from Sorrells—one for Robertson and three for Robertson's partner—and arranged to meet the following day. On the morning of July 26, Robertson increased his order, requesting "at least two" for himself and three for his partner if the partner was "still ready." Sorrells directed his associate, Colette Douglas, to complete the transaction with Robertson at a McDonald's restaurant. Robertson contacted Sorrells again on August 2. In that conversation, Sorrells agreed to meet Robertson at a gas station and said that he was going to give Robertson "the same number I gave you on the last one." Robertson replied that "[i]t's like seven."

A week later, on August 9, Robertson agreed to pick up three eight-ounce containers of PCP from Sorrells at his home. A detective conducted surveillance outside Sorrells's home on that date. He saw Robertson arrive in a white Kia automobile and watched as Sorrells retrieved a package from his truck, climbed into the passenger side of the Kia, and then exited the Kia without the package. After Robertson drove away, police attempted to stop his vehicle, but Robertson fled. Police located the Kia after it was abandoned. Inside the car, officers found Robertson's identification and several cigarettes not yet "dipped" with PCP. Robertson called Sorrells that night, informing him that he had lost one of the three containers of PCP and buried the other two.

In 2013, a grand jury charged twenty defendants, including Robertson, with two conspiracy offenses: conspiracy to distribute and to possess with intent to distribute one kilogram or more of PCP, 280 grams or more of cocaine base, and 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) & (B), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) & (h). After a three-day trial, a jury found Robertson guilty of a lesser-included drug trafficking offense (conspiracy to distribute 100 grams or more of PCP) and guilty of the conspiracy to commit money laundering.

At sentencing, the district court concluded by a preponderance of the evidence that Robertson was responsible for at least one kilogram of PCP and calculated his base offense level at 30 under USSG §§ 2S1.1(a)(1) and 2D1.1(c)(5). The court then applied a two-level increase under USSG § 2S1.1(b)(2)(B), because Robertson was convicted of money laundering conspiracy under 18 U.S.C. § 1956. Finally, the court applied a two-level increase under USSG § 3C1.2 for reckless endangerment during flight on August 9. With a total offense level of 34 and criminal history category IV, Robertson's guideline range was 210 to 262 months. The court sentenced him to 252 months' imprisonment on each count, to be served concurrently.

II.

Robertson first appeals the district court's finding at sentencing that he was accountable for one kilogram of PCP. We review the district court's finding of drug quantity for clear error. *United States v. Bradley*, 643 F.3d 1121, 1126 (8th Cir. 2011). Under the sentencing guidelines, a conspiracy defendant's base offense level, including drug quantity, is determined based on his own acts and "all acts and omissions of others that were . . . (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." USSG § 1B1.3(a)(1)(B). Where not all drugs have been seized, the district court may "approximate the quantity of drugs." *United States v. Frazier*, 280 F.3d 835, 851 (8th Cir. 2002). In that event, the measurements need not be precise, "so long as the record reflects a basis for the court's decision." *United States v. Roach*, 164 F.3d 403, 414 (8th Cir. 1998).

In the presentence report, the probation office recommended that Robertson was accountable for 1.36 kilograms of PCP. The probation office relied on three transactions: (1) the July 22 intercepted communication showing that Robertson arranged to receive from Sorrells a "ticket," which the probation office construed to mean an eight-ounce bottle of PCP; (2) the July 26 transaction in which Robertson received two "jolly green ranchers," which the probation office construed to mean two eight-ounce bottles of PCP; and (3) the August 9 incident during which Robertson obtained three eight-ounce bottles of PCP from Sorrells. The probation office totaled these transactions to arrive at 48 ounces of PCP, multiplied the number of ounces by 28.35 grams, and reached a sum of 1.36 kilograms of PCP. Robertson objected to the recommendation.

At sentencing, the district court found by a preponderance of the evidence that "there was at least 1 kilo of PCP that was dealt with, and I suspect there was more."

-4-

S. Tr. 31. The court did not specify the basis for its calculation, but the transcript provides some guidance about the court's likely rationale.

First, the court understood that Robertson was accountable under the guidelines for quantities that he did not possess himself if they were possessed or distributed by others in furtherance of the conspiracy and reasonably foreseeable to Robertson. Although the government apparently declined to follow USSG § 1B1.3(a)(1), saying that "we don't in this district usually hold somebody" accountable for the acts of co-conspirators, S. Tr. 44, the court recognized that "conspiracy is an inchoate offense," and that the defendant "doesn't actually have to touch it" if there is "an agreement . . . to move that amount." S. Tr. 16. Even where the parties stipulate to certain facts or, as here, decline to follow the guidelines, the court is not bound by the position of the parties and may calculate the guideline levels according to the law and all relevant factors. *See* USSG § 6B1.4 & comment.

Second, the parties eventually agreed that the proper weight attributable to PCP was 24.75 grams per ounce, not the 28.35 grams per ounce used by the probation office. At one point during the hearing, the court understood the government to argue that two eight-ounce containers from July 26 amounted to 453.6 grams, and three eight-ounce containers from August 9 equaled 680.4 grams, for a total of 1.134 kilograms. S. Tr. 20. This calculation apparently was based on the probation office's assumption that one ounce of PCP weighs 28.35 grams. At other points in the hearing, however, the parties agreed that 28.35 grams was not the proper conversion ratio. S. Tr. 13. A forensic chemist testified at trial that after considering the density of PCP, she concluded that an eight-ounce container of PCP weighed 198 grams, such that one ounce of PCP weighed 24.75 grams. This conversion ratio is thus supported by the record.

Third, Robertson's position was that some of the transactions, including the transaction involving a "ticket" discussed on July 22, involved two ounces of PCP.

Robertson argued that Sorrells distributed eight-ounce quantities in the lemon and lime juice bottles and two-ounce quantities in vanilla extract bottles. He urged that when the record did not show clearly which quantity was involved in a particular transaction, the court should find that Robertson received two ounces rather than eight ounces. S. Tr. 27.

Having considered the record as a whole, we conclude that the district court did not clearly err in holding Robertson accountable for one kilogram or more of PCP. Robertson admits that there is sufficient evidence to show that he possessed three eight-ounce containers, amounting to 594 grams of PCP, on August 9. The dispute concerns whether there was sufficient evidence to support a finding that Robertson was accountable for another 406 grams.

The record supports a finding that Robertson possessed 396 grams of PCP on July 26. Recordings of intercepted telephone calls introduced at trial showed that Robertson requested "at least two" "green jolly ranchers" or "green ones" from Sorrells on July 26. Robertson emphasizes that the detective who witnessed the transaction testified on cross-examination that Robertson received only one bottle, but he later agreed on redirect examination that Robertson was obtaining "multiple items" on July 26. Based on this inconsistent testimony and the recorded conversation about a transaction involving "at least two" units, it was not clear error for the court to find that Robertson obtained two bottles.

Robertson argues that because Sorrells dealt other drugs in addition to PCP, the phrase "green jolly rancher" could have referred to something other than PCP. The evidence showed, however, that Sorrells sold PCP in green lime juice bottles referred to as "green tops." Although Robertson did not use the phrase "green tops" in his call to Sorrells on July 25, the court reasonably could infer that the terms "green jolly ranchers" or "green ones" described the same green lime juice bottles or "green tops" in which Sorrells sold eight-ounce quantities of PCP. When Robertson asked Sorrells

for "green jolly ranchers" on July 25, Sorrells confirmed that Robertson was "talking about the *green ones*," and the woman from whom Robertson obtained these "green ones" kept a supply of Sorrells's PCP at her home. Witnesses also testified that the phrase "green jolly rancher" did not refer to marijuana that Sorrells distributed. The evidence therefore supported the court's conclusion that Robertson obtained two green lime juice bottles, each containing approximately 198 grams of PCP, on July 26.

With evidence that Robertson possessed 594 grams on August 9 and 396 grams on July 26, the district court's finding of one kilogram or more is supported if Robertson is accountable for only ten more grams of PCP from the conspiracy. There are at least two ready sources of that additional quantity. For one, Robertson conceded in the district court that a coded transaction on July 22 that included discussion of a "ticket" involved at least two ounces of PCP. Although the probation office construed the "ticket" to mean an eight-ounce container of PCP, Robertson argued that the court should find that the transaction involved only a two-ounce vanilla extract container. S. Tr. 27. Accepting Robertson's position, the July 22 transaction involved 49.50 grams, resulting in a total quantity of more than one kilogram.

Alternatively, the intercepted conversations on July 25 and 26—the dates on which Robertson arranged to receive two eight-ounce containers for himself—show that Sorrells possessed with intent to distribute three more eight-ounce containers in furtherance of the conspiracy. On July 25, Robertson told Sorrells that Robertson's partner wanted "three" of the "green ones," and Sorrells said, "Alright, . . . I'll be ready." On July 26, when Sorrells asked Robertson how many he "needed all together," Robertson replied that he needed "at least two" for himself and possibly "three" for his "partner" if the partner was "still ready." Sorrells answered, "Alright, but you said two for you?" Based on this discussion, the record supports a finding that Robertson knew or reasonably could have foreseen that Sorrells possessed with

-7-

intent to distribute three additional eight-ounce quantities of PCP that would be available for Robertson's partner or some other customer. This quantity also would support the district court's finding that Robertson was accountable for a total of one kilogram or more of PCP.

For these reasons, the district court did not clearly err in calculating a base offense level of 30.

III.

Robertson next challenges the district court's application of a two-level increase for reckless endangerment during flight under USSG § 3C1.2. Section 3C1.2 calls for a two-level increase if a defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Where, as here, a defendant's base offense level is determined by "the underlying offense from which the laundered funds were derived," *see* USSG § 2S1.1(a)(1), an application note to § 2S1.1 provides that "application of any Chapter Three adjustment shall be determined based on the offense covered by [§ 2S1.1] (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived." USSG § 2S1.1, comment. (n.2(C)).

Relying on the application note, Robertson argues that an adjustment under § 3C1.2 applies only if the reckless endangerment relates to money laundering and not to the underlying drug offense. He contends that his flight on August 9 related only to his drug offense, and that the court therefore erred in applying the two-level increase under § 3C1.2.

The guideline commentary provides that an adjustment under § 3C1.2 applies if it is "based on" Robertson's money laundering offense. In this case, the district

court did not clearly err in finding that the adjustment applied under that standard. The government's evidence at trial showed that Robertson and Sorrells engaged in a typical drug-fronting scheme involving money laundering: Sorrells advanced PCP to dealers like Robertson on credit; the dealers would sell the drug and reinvest the proceeds in future drug purchases. The drug trafficking and money laundering conspiracies were therefore intertwined, so when Robertson fled, he was evading apprehension for participating in both a money laundering conspiracy and a drug trafficking conspiracy. Because Robertson fled from officers to avoid apprehension for his money laundering offense, the district court properly applied a two-level increase under § 3C1.2.

IV.

Robertson also contends that the district court's 252-month sentence is substantively unreasonable, but his argument is premised largely on an incorrect assumption that the court erred in calculating the advisory guideline range. A sentence within the advisory range is presumptively reasonable, and Robertson has not identified compelling reasons why the district court abused its discretion in following the recommended guideline range for the drug trafficking conspiracy.

As to the money laundering conspiracy, Robertson correctly points out that the concurrent sentence of 252 months on that count of conviction exceeds the twenty-year statutory maximum established by 18 U.S.C. § 1956(a)(1). We therefore vacate the sentence on Count Two and remand with directions to limit the term of imprisonment on that count to the statutory maximum of 240 months. *See United States v. Zoran*, 682 F.3d 1060, 1065 n.7 (8th Cir. 2012); *United States v. Hergott*, 562 F.3d 968, 970-71 (8th Cir. 2009).

## V.

After counsel submitted an opening brief on Robertson's behalf raising the arguments described above, Robertson filed a motion for leave to file a supplemental *pro se* brief with additional arguments. The clerk of court, without involvement by any judge, entered an order granting this motion, and Robertson's *pro se* brief was entered on the docket. The government responded to the brief filed by counsel but did not address the arguments raised in Robertson's *pro se* brief.

It is longstanding Eighth Circuit policy that when a party is represented by counsel, we will not accept *pro se* briefs for filing. *United States v. Conklin*, 750 F.3d 773, 775 (8th Cir. 2014); *United States v. Martin*, 59 F.3d 767, 768 n.2 (8th Cir. 1995); *United States v. Payton*, 918 F.2d 54, 56 n.2 (8th Cir. 1990). We therefore vacate the clerk's order granting leave to file a *pro se* brief and enforce our policy against multiple filings. Robertson is not unfairly prejudiced by this action, because the *pro se* brief was not filed until after counsel had selected the arguments to raise on appeal and filed an opening brief. The motion for leave to file a *pro se* brief should have been denied, and the effect of our vacating the previous order is no different than a denial.

\*     \*     \*

For these reasons, Robertson's convictions and the sentence on Count One are affirmed, and the case is remanded for the limited purpose of reducing the sentence on Count Two to the statutory maximum of 240 months.

_____