# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1686

_____

United States of America

*Plaintiff - Appellee*

v.

Kieffer Michael Simmons

*Defendant - Appellant*

_____

No. 22-2179

_____

United States of America

*Plaintiff - Appellee*

v.

Terry Eugene Hambrick

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 11, 2023
Filed: June 14, 2023

_____

Before GRASZ, MELLOY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

A jury convicted co-defendants Kieffer Simmons and Terry Hambrick of conspiracy to distribute and distribution of methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. Both challenge several district court[1] rulings, and Hambrick appeals his conviction. We affirm.

## I.

In January 2020, the Government began using a confidential informant (CI) for controlled buys of guns and drugs in Des Moines, Iowa. The controlled buys resulted in multiple arrests. Most of the co-defendants pleaded guilty but Simmons and Hambrick went to trial.

## II.

We first turn to Simmons. Co-defendant Leon Edwards introduced the CI to Simmons. In February 2020, Edwards and the CI met with Simmons, and Simmons sold the CI methamphetamine. Simmons sought to call Edwards at trial, who would testify that Simmons did not sell methamphetamine to the CI. Edwards also wrote a letter stating the same. The Government moved to exclude Edwards's testimony and letter. At the final pretrial conference, Edwards's attorney indicated that Edwards did not want to testify, and if called, he would invoke his Fifth Amendment right against self-incrimination. To secure Edwards's testimony, Simmons asked the court to order the Government to grant Edwards immunity or, alternatively, immunize Edwards itself. The court declined to do either and refused to admit Edwards's letter in lieu of his testimony because it was inadmissible hearsay.

_____

[1]The Honorable Rebecca L. Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Additionally, before trial, Simmons proposed a jury instruction on multiple conspiracies. The district court found that the evidence did not support multiple conspiracies, so it did not give the instruction.

Simmons argues that (1) Edwards's testimony and written statement should have been admitted and (2) the district court should have instructed the jury on multiple conspiracies instead of a single conspiracy. We review the district court's rulings for an abuse of discretion. *See United States v. Blaylock*, 421 F.3d 758, 770 (8th Cir. 2005) (declining to compel witness testimony); *United States v. Cree*, 778 F.2d 474, 477 (8th Cir. 1985) (refusing to admit hearsay evidence); *United States v. Ivers*, 967 F.3d 709, 720 (8th Cir. 2020) (rejecting a proposed jury instruction).

A.

Simmons argues that, in exchange for Edwards's testimony, the court should have ordered the Government to give Edwards immunity or immunized Edwards itself. But district courts "lack[] authority to compel the Government to request immunity for [a defense witness]." *United States v. Bowling*, 239 F.3d 973, 976 (8th Cir. 2001) (cleaned up). "Additionally, the district court did not have the authority to grant [Edwards] immunity because this court has consistently refused to recognize the concept of judicial immunity." *Id.* (cleaned up). Simmons's other arguments regarding Edwards's testimony are equally unavailing.[2] All considered, the district court did not abuse its discretion.

---

[2]Simmons argues that his Sixth Amendment rights were violated when the court did not compel Edwards to testify. But Simmons's "Sixth Amendment right to compulsory process does not include the right to compel [a witness] . . . to waive his or her Fifth Amendment privilege against self-incrimination." *United States v. Ralston*, 973 F.3d 896, 912 (8th Cir. 2020) (citation omitted). Simmons also argues that the district court should not have relied on Edwards's counsel's statement at the pretrial conference, and instead should have required Edwards to personally assert his Fifth Amendment right at trial. But in most cases, a counsel's statement that "the witness would exercise his Fifth Amendment rights if called to testify is sufficient

Simmons also argues that, in lieu of Edwards's testimony, the court should have admitted Edwards's letter under the residual hearsay exception. *See* Fed. R. Evid. 807(a). The residual exception is to "be used very rarely, and only in exceptional circumstances." *United States v. Peneaux*, 432 F.3d 882, 893 (8th Cir. 2005) (citation omitted). To fall within the exception, the statement must be "supported by sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). The district court concluded that the letter was not trustworthy. Although the court did not explain how it reached its conclusion, the court's "discretion in determining the admissibility of evidence is particularly broad in a conspiracy trial." *United States v. King*, 898 F.3d 797, 805 (8th Cir. 2018) (cleaned up). And it's not hard to imagine why the letter was not sufficiently trustworthy—the letter was not written under oath and contradicted the CI's sworn testimony. Given the district court's considerable discretion, and our deference to the district judge "who saw and heard the evidence," *United States v. Burch*, 809 F.3d 1041, 1045 (8th Cir. 2016) (citation omitted), the court did not abuse its discretion by excluding the letter.

B.

Next, Simmons argues that the court should have instructed the jury on multiple conspiracies instead of a single conspiracy. He proposed that the jury must "find that he was a member of the conspiracy charged in the indictment [and] not a member of some other separate conspiracy" to find him guilty. Simmons Br. 31. He argues that he was part of a separate conspiracy because he did not know any of the co-defendants except Edwards, all co-defendants had separate contact with Edwards and the CI, and the controlled buys occurred in different places.

District courts look to many factors when determining whether a multiple conspiracy instruction is warranted, like "the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the

---

for the district court to refuse to compel that witness to appear." *United States v. Warfield*, 97 F.3d 1014, 1019–20 (8th Cir. 1996).

conspirators involved, and the time frame in which the acts occurred." *United States v. Radtke*, 415 F.3d 826, 838–39 (8th Cir. 2005) (citation omitted). "A single conspiracy may be found when the defendants share a common overall goal and the same method is used to achieve that goal, even if the actors are not always the same." *United States v. Gilbert*, 721 F.3d 1000, 1005 (8th Cir. 2013) (citation omitted).

Edwards introduced the CI to several people, including Simmons and later Hambrick (through a middleman). The drug deals involving the co-defendants were similar in that they started with Edwards and occurred in Des Moines during the same time frame. The fact that Simmons did not know his co-defendants did not warrant a multiple conspiracies instruction. *See United States v. Campbell*, 986 F.3d 782, 797 (8th Cir. 2021) (holding that a multiple conspiracies instruction was not warranted where there was no evidence of a separate conspiracy), *cert. denied*, 142 S. Ct. 751 (2022). The district court did not abuse its discretion in refusing to instruct the jury on multiple conspiracies.

## III.

We now turn to Hambrick's case. Edwards introduced the CI to co-defendant Leroy Williams, a middleman. In April 2020, the CI and Williams were sitting in Williams's car. Williams then left the car and got into a white SUV. When Williams returned, he sold the CI a plastic bag of methamphetamine. After the deal, agents confirmed that Hambrick was the driver of the SUV. Fingerprints belonging to Hambrick, Williams, and the CI were found on the bag.

At trial, two witnesses, K.T. and D.S., testified that Hambrick was a drug dealer. K.T. testified that Hambrick sold him methamphetamine near where the April 2020 buy took place in the same white SUV. D.S. testified that Hambrick sold him PCP in Hambrick's truck. Hambrick was convicted. He moved for a new trial, arguing that the district court erred in allowing K.T.'s and D.S.'s testimony. The district court denied the motion.

Hambrick argues that there was insufficient evidence to convict him. We review the sufficiency of the evidence *de novo* in the light most favorable to the verdict. *United States v. Chahia*, 544 F.3d 890, 893 (8th Cir. 2008). Hambrick also challenges the admissibility of K.T.'s and D.S.'s testimony. Because Hambrick did not object to their testimony at trial, we review for plain error. *See United States v. Maxwell*, 643 F.3d 1096, 1099–1100 (8th Cir. 2011).

A.

We first consider Hambrick's challenge to the sufficiency of the evidence. "The standard for reviewing a claim of insufficient evidence is strict, and a jury's guilty verdict should not be overturned lightly." *United States v. Tate*, 633 F.3d 624, 628 (8th Cir. 2011) (citation omitted). Hambrick argues that the CI did not identify, know, or ever meet with Hambrick, and therefore Hambrick could not have been part of the conspiracy. But the CI's knowledge of Hambrick or Hambrick's role is not necessary for a conspiracy conviction. *See United States v. Johnson*, 719 F.3d 660, 666 (8th Cir. 2013) (noting that "a conspirator need not know all of the conspirators or be aware of all the details of the conspiracy, so long as the evidence is sufficient to show knowing contribution to the furtherance of the conspiracy" (cleaned up)).

The evidence established that Williams bought methamphetamine from Hambrick and sold it to the CI. The CI testified to arranging the buy and Williams's phone records showed calls with Hambrick on the day of the buy. After Williams bought methamphetamine from someone in the white SUV, officers identified Hambrick as the driver. The plastic bag that Williams later sold the CI had fingerprints from all three men. Additionally, the jury heard testimony from K.T. and D.S. that Hambrick sold drugs in the same car and in the same location as the controlled buy. This evidence was sufficient to sustain his conspiracy conviction.

B.

Hambrick argues that it was plain error to admit K.T.'s and D.S.'s testimony. To survive plain error review, Hambrick must show (1) an error, (2) the error was plain, and (3) that it affected a substantial right. *United States v. Jawher*, 950 F.3d 576, 579 (8th Cir. 2020).

Hambrick argues that the testimony was impermissible prior bad act evidence. *See* Fed. R. Evid. 404(b)(1). Alternatively, he argues that it was unfairly prejudicial. *See* Fed. R. Evid. 403. The Government argues that the testimony was properly admitted as intrinsic evidence. *See United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014).

We do not need to resolve the purpose for which K.T.'s and D.S.'s testimony was offered because Hambrick's challenge does not survive the third prong of plain error review. An error affects a substantial right if there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (citation omitted). The testimony of the agent and the CI, Williams's phone records, the fingerprints on the bag of methamphetamine, and the supporting exhibits all support the jury verdict without the testimony of K.T. and D.S.

IV.

For the reasons stated above, we affirm the district court's rulings and Hambrick's conviction.

_____