# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-1542

_____

United States of America,

*Plaintiff - Appellee,*

v.

James Alan Bennett,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: October 20, 2023
Filed: January 26, 2024

_____

Before SMITH, Chief Judge, LOKEN and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

James Bennett was convicted after a jury trial of conspiring to distribute methamphetamine. The district court[*] sentenced Bennett to 300 months'

_____

[*]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

imprisonment. Bennett appeals and challenges both his conviction and sentence. We conclude that there is no reversible error and affirm the judgment.

## I.

Based on seized evidence and testimony, prosecutors alleged that Bennett was a partner with Khrista Erdman in a methamphetamine trafficking conspiracy. On October 1, 2021, officers executed a search warrant at Erdman's house in Des Moines. They seized over six kilograms of methamphetamine from the trunk of Erdman's car, and 747 grams of the drug from Bennett's backpack. Erdman later testified that she and Bennett acquired the drugs in Kansas City and returned to Des Moines the night before the search.

A grand jury charged Bennett with conspiring to distribute methamphetamine from March 2021 through October 1, 2021. *See* 21 U.S.C. § 846. The indictment alleged a drug quantity of 500 grams or more of a mixture or substance containing methamphetamine. *See id.* § 841(b)(1)(A).

At trial, Erdman testified that Bennett was her partner in a large-scale drug distribution scheme. She testified that Bennett routinely accompanied her on out-of-state trips to acquire methamphetamine. The partners returned to Iowa with between 4.5 and 30 kilograms of methamphetamine per trip. She testified that Bennett distributed some of the methamphetamine to Kenneth Crook. Crook also testified and confirmed Erdman's account of their activities. The government introduced text messages and location data from Bennett's cellular telephone that further corroborated the testimony of the co-conspirators. In total, there was evidence suggesting that the conspirators trafficked around 120 kilograms of methamphetamine.

Some evidence also suggested that Bennett had been dealing smaller quantities of methamphetamine to customers in the Des Moines area. Erdman testified that Bennett acquired methamphetamine that he distributed to her from another source before she informed him of a new, larger source in Kansas City. At the close of evidence, Bennett requested that the jury be instructed on the potential for multiple conspiracies. The district court denied the request but said that Bennett was "certainly able to argue that point to the jury."

The verdict form gave the jury three options on drug quantity and instructed the jury as follows: "Check the drug quantity which the jury unanimously agrees was involved in the offense. If you are unable to agree, check the lowest drug quantity." The jury did not convict Bennett of the charged quantity of 500 grams or the next option of at least 50 grams. Instead, the jury selected "[s]ome quantity of a mixture or substance containing methamphetamine." *See Id.* § 841(b)(1)(C).

At sentencing, however, the district court found that Bennett was responsible for at least 4.5 kilograms of methamphetamine under the sentencing guidelines, and calculated an advisory guideline sentence of 360 months' imprisonment. The court varied downward and sentenced Bennett to 300 months.

II.

Bennett first argues that the government produced insufficient evidence to support his conviction. Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable jury could find that Bennett conspired with others to distribute methamphetamine. Erdman testified that Bennett accompanied her on interstate trips to acquire methamphetamine, and that Bennett later transferred the drugs to Crook for further distribution. Crook's testimony at trial and location data recovered from Bennett's cell phone corroborated Erdman's account. Officers seized drugs from the trunk of Erdman's car and from Bennett's backpack at the

conclusion of the charged conspiracy. The combination of co-conspirator testimony, seized drugs, and corroborating data were enough to support the verdict.

Bennett next argues that the district court abused its discretion by declining to instruct the jury on multiple conspiracies. Bennett contends that evidence of his involvement in making smaller distributions before he joined with Erdman and Cook on larger-scale trafficking supported a finding of two separate conspiracies. Bennett's proposed jury instructions do not include an instruction on multiple conspiracies, and the colloquy during trial does not set forth particular language requested. On appeal, Bennett suggests that he wanted "the standard multiple conspiracy instruction," but still does not specify the proposed terms. There is a model Eighth Circuit jury instruction providing that in some cases, a jury must decide whether there were really two separate conspiracies, but may still convict the defendant if he was a member of the conspiracy as charged in the indictment.

That Bennett also distributed drugs obtained from another source to persons unknown to Erdman and Cook does not necessarily mean that he participated in two conspiracies. A conspirator need not know all of her co-conspirators, and the possibility that Erdman and Cook did not know some persons who dealt with Bennett does not by itself necessitate a multiple-conspiracy instruction. *United States v. Simmons*, 70 F.4th 1086, 1090 (8th Cir. 2023). So too, "[a] single conspiracy is not converted to multiple conspiracies simply because different defendants enter a conspiracy at different times or perform different functions." *United States v. Perez-Trevino*, 891 F.3d 359, 372 (8th Cir. 2018).

But assuming for analysis that the evidence was substantial enough to support a reasonable finding that Bennett participated in two conspiracies, we see no prejudice to Bennett from the absence of an instruction. "[W]e will reverse a conviction for failure to give a multiple conspiracy instruction only when the failure to give the instruction causes substantial prejudice to the defendant." *United States*

*v. Haslip*, 416 F.3d 733, 736 (8th Cir. 2005). Bennett was still able to argue the multiple-conspiracies point and to contend that he was not a member of the charged conspiracy. The principal concern with multiple conspiracies is the potential for "spillover" of evidence from an uncharged conspiracy into a trial on the charged conspiracy. *United States v. Jones*, 880 F.2d 55, 66 (8th Cir. 1989). Where, as here, the defendant would be a member of both possible conspiracies, "the danger of prejudice from [spillover] is minimal, if not non-existent." *Id.* (quoting *United States v. Scott*, 511 F.2d 15, 20 (8th Cir. 1975)). There was no reversible error in the jury instructions.

III.

Bennett also raises claims of procedural error at sentencing. He first contends that the district court erroneously denied him a two-level reduction for acceptance of responsibility under USSG § 3E1.1. The court should apply a two-level reduction if the defendant "clearly demonstrates" that he accepts responsibility for his offense. USSG § 3E1.1(a). This adjustment generally "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." USSG § 3E1.1, comment. (n.2). In "rare situations," however, a defendant who is convicted after trial may earn the adjustment, such as when the defendant "goes to trial to assert and preserve issues that do not relate to factual guilt." *Id.*; *see United States v. Monds*, 945 F.3d 1049, 1054 (8th Cir. 2019).

This case was not one of those rare situations. Bennett's defense did not merely preserve issues unrelated to factual guilt. To the contrary, he consistently maintained that he was not factually guilty of the charged conspiracy. Although Bennett successfully defended against the charge that he was responsible for 500 grams or more of methamphetamine, his position at trial was that he was not a member of the charged conspiracy at all—not that he was a guilty conspirator who was responsible for a lesser quantity of drugs. Bennett still complains that he did not

-5-

conspire with Erdman and Cook, but the jury found him guilty of the charged offense. There was no clear error in denying the downward adjustment.

Bennett next objects to the district court's calculation of drug quantity. "In a drug conspiracy, a defendant is held responsible for all reasonably foreseeable drug quantities that were within the scope of the criminal activity that he jointly undertook." *United States v. Vinton*, 429 F.3d 811, 817 (8th Cir. 2005); *see* USSG § 1B1.3(a)(1)(B). The district court determined that Bennett was responsible for more than 4.5 kilograms of methamphetamine. The methamphetamine seized by officers at Erdman's residence on October 1, 2021, is sufficient by itself to support the court's finding. Erdman's testimony that Bennett participated in other trips to acquire large quantities of methamphetamine further buttresses the court's conclusion. Bennett objects that the jury found beyond a reasonable doubt only that he conspired to distribute a quantity of fewer than fifty grams of methamphetamine mixture. But a sentencing court may attribute a larger drug quantity so long as the court's calculation is supported by a preponderance of the evidence. *United States v. Johnson*, 75 F.4th 833, 847 (8th Cir. 2023).

Bennett also contends that the 300-month sentence imposed by the district court is unreasonable. Where, as here, the court varied downward from the guideline sentence, "it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Espinoza*, 9 F.4th 633, 637 (8th Cir. 2021) (internal quotation omitted). Bennett complains that the court gave insufficient weight to the median sentence imposed nationwide for his offense. The district court properly observed, however, that the national median sentence does not account for the unique circumstances of an individual case—such as Bennett's prior serious drug felony, his extensive criminal history that placed him in Category V under the guidelines, and a large drug quantity. Even so, the district court considered mitigating circumstances and varied downward from the guideline sentence by sixty months. The court acted within its discretion by imposing a term that was below the

guideline sentence but still represented a substantial measure of punishment for a serious offense. *See id.*

*     *     *

The judgment of the district court is affirmed.

_____