# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2637

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher King

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: November 17, 2025
Filed: February 3, 2026
[Unpublished]

_____

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Christopher King pled guilty to possession of firearms by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(8). The district court[1] sentenced him to a within-Guidelines term of 63 months' imprisonment, and King

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa.

appeals claiming the district court erred in calculating his Sentencing Guidelines range. King challenges the district court's drug quantity determinations and asks us to remand for resentencing. We affirm.

At the time of sentencing, the district court adopted the Presentence Investigation Report ("PSIR"), which applied U.S.S.G. § 2K2.1(b)(6)(B) based on King's involvement in the felony offenses, under Iowa law, of possession of a controlled substance with intent to distribute and distribution of controlled substances, specifically methamphetamine and marijuana. After applying the applicable enhancements in § 2K2.1, King's adjusted offense level was 22. The district court then applied the cross-reference in U.S.S.G. § 2K2.1(c)(1)(A), which directs application of the Guidelines for the offense level for a substantive offense—here, possession of controlled substances with intent to distribute—if it is greater than for the firearm offense.[2] After applying any applicable enhancements and making its findings as to drug quantities and converted drug weight under U.S.S.G. § 2D1.1, King's offense level became 28. The district court applied a downward variance, treating ice methamphetamine as a methamphetamine mixture, which reduced King's offense level to 26. King's offense level was further reduced by three levels for acceptance of responsibility. Combined with criminal history category II, King's advisory Sentencing Guidelines range was 51 to 63 months. The district court sentenced King to 63 months to be followed by two years of supervised release.

On appeal, King asserts the government did not present sufficient evidence to establish that he possessed with the intent to distribute between 400 and 700 kilograms of converted drug weight, as calculated in the PSIR. He claims the evidence attributing 189.11 grams of methamphetamine and 453.6 grams of

---

[2]Application Note 14(B) to U.S.S.G. § 2K2.1(b)(6)(B) and (c)(1) provides, in relevant part: if there is a drug trafficking offense in which a firearm is found in close proximity to drugs and the firearm is listed in the offense of conviction, the cross-reference "is warranted because the presence of the firearm has the potential of facilitating another felony offense."

marijuana to him was unreliable and based on too many imprecisions and qualifications. King concedes that reversal of the marijuana quantity alone would have no effect on his base offense level.

"In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines *de novo*." United States v. Browne, 89 F.4th 662, 665 (8th Cir. 2023) (quoting United States v. Barker, 556 F.3d 682, 689 (8th Cir. 2009)). A sentencing court's drug quantity calculation must be supported by a preponderance of the evidence. United States v. Bennett, 91 F.4th 918, 923 (8th Cir. 2024). We review the district court's drug quantity findings for clear error. United States v. Robertson, 883 F.3d 1080, 1083 (8th Cir. 2018).

A sentencing court may approximate the quantity of controlled substances attributable to a defendant when the amount of narcotics seized by law enforcement does not reflect the scale of the drug trafficking offense. Browne, 89 F.4th at 665. The approximation and specific quantity determination may be based on imprecise evidence so long as the record reflects a basis for the decision. Id. "Many defendants have appealed estimated drug quantity findings; few have cleared the high bar of clear error review." United States v. Sterling, 942 F.3d 439, 442 (8th Cir. 2019).

King asserts the district court erred in adopting the marijuana quantity calculated in the PSIR because it was based on C.B.'s grand jury testimony and appeared to be "drawn from thin air." Before the grand jury, C.B. testified that King had about a pound of marijuana stashed behind his couch. Another grand jury witness, A.R., testified that King stored marijuana in a one-gallon Ziploc bag. At sentencing, C.B. testified that she saw white powder and pipes at King's apartment on more than one occasion, and that she also saw marijuana stashed behind his couch. The district court found C.B.'s testimony credible, noting she had no history of criminal conduct or of dishonesty nor was there any indication she had a motive to fabricate King's drug trafficking activities. The record contains an adequate basis supporting the district court's determination.

As to the methamphetamine quantity, King contends the district court erred when it relied on C.B.'s testimony because she could not specify the amount, number of sales, or how much King had on hand for sale. He also takes issue with the court's reliance on A.R.'s and D.B.'s grand jury testimony because they were never subject to cross-examination and displayed uncertainty as to how often they bought methamphetamine from King. D.B. testified before the grand jury that, over a two-year period, she bought a teener/T-shirt (1.75 grams) of methamphetamine from King, sometimes daily and other times once or twice a week depending on her usage. The largest quantity she ever bought from King was a quarter ounce. D.B. further testified that she saw King selling methamphetamine out of his apartment to other people. A.R. testified that she bought a T-shirt quantity of methamphetamine from King either once or twice a week over a several month period. A.R. also saw King selling methamphetamine to other people when she was at his apartment.

A district court's determination based on witness credibility "can virtually never be clear error," unless the finding is "contradicted by extrinsic evidence or internally inconsistent." Browne, 89 F.4th at 666. While King asks us to discount the grand jury testimony, this Court has upheld reliance on grand jury testimony at sentencing on the ground that "it 'has indicia of reliability because it was given under oath and subject to the penalties of perjury.'" United States v. Cross, 888 F.3d 985, 993 (8th Cir. 2018) (quoting United States v. Morin, 437 F.3d 777, 781 (8th Cir. 2006)). The district court acknowledged the indicia of reliability inherent in grand jury testimony while also recognizing that, in this case, there were valid reasons presented to question D.B.'s testimony. In balancing these considerations, the district court noted it came down to how much weight to give the testimony.

Notably, the district court premised its drug quantity determinations not on a single piece of evidence, but on several pieces of evidence, including: (1) witness and grand jury testimony involving King's possession and distribution of drugs; (2) law enforcement testimony showing on two separate dates, about six months apart, similar types and quantities of drugs were found during separate searches of King's home; (3) expert testimony indicating that although the drug quantities seized were

smaller than what is sometimes involved with drug distribution, the packaging and presence of scales suggested distribution rather than user amounts; and (4) King's admissions in a letter with regard to distributing marijuana in exchange for alcohol.

After reviewing and weighing the evidence in the record, the court found the quantities set forth in the PSIR were supported by sufficient evidence and we can find no clear error in that determination. Attributing only 189.11 grams of methamphetamine to King was less than if all the testimony was credited. Attributing sales to D.B. on a weekly basis did not account for any periods when she got methamphetamine on a daily or twice weekly basis. Likewise, the quantity accounted for weekly sales over a six-week period to A.R. when A.R. testified that she purchased from King once or twice a week. Given the ample evidence in the record supporting the district court's drug quantity determinations, King is unable to satisfy the "high bar" of showing clear error.

The firearm identified in the offense of conviction was found tucked between the mattress and the bed frame with some of the drugs at issue stored in the closet of the same room. The district court found the evidence was sufficient to establish that King was engaged in the distribution or possession with intent to distribute controlled substances and the firearm by his mattress did facilitate the distribution of drugs. The evidentiary record supports application of the cross-reference set forth in U.S.S.G. § 2K2.1(c)(1)(A).

For these reasons, we conclude the district court properly calculated King's Sentencing Guidelines range. We affirm the judgment of the district court.

_____