UNITED STATES of America, Appellee,

v.

José Lazaro ROBAINA, Appellant.

No. 94–1725.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 9, 1994.

Decided Nov. 2, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 20, 1994.

Arthur Ray Martinez, argued for appellant.

Carol Ann Needles, argued for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

McMILLIAN, Circuit Judge.

Jose Lazaro Robaina appeals a final order entered in the District Court[1] for the District of Minnesota, upon a jury verdict, finding him guilty of four counts of drug trafficking in violation of 21 U.S.C. § 846(a)(1) and one count of use of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1). Robaina was sentenced to 84 months on the drug trafficking convictions and 60 months on the firearm conviction, to run consecutively. For reversal, Robaina argues that the district court erred in (1) denying his motion to sever count two from the other counts, (2) refusing to admit the testimony of two defense witnesses, and (3) ruling that there was sufficient evidence to support the jury verdict finding him guilty of conspir-

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

acy to possess cocaine and aiding and abetting possession with intent to distribute cocaine, counts one and two respectively. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

On October 17, 1992, Maria Silva, Robaina's companion, delivered two bags filled with comforters and bedding to be washed and folded at a Rochester, Minnesota, laundromat. Shortly after the laundromat attendant began her shift at 2:00 p.m., she began washing Silva's laundry. While loading the washer with the comforter from the second bag of laundry, the laundromat attendant dropped the bag and heard a "thunk." Thinking there was possibly a pair of tennis shoes in the bag, she looked inside and discovered two brick-shaped objects which were later determined to be two kilograms of cocaine. The police were summoned. A local police officer responded to the call from the laundromat and was interviewing laundromat employees when Silva arrived. The officer questioned Silva; she provided her address and stated that only she and her three children lived there.

Later that day the Rochester police obtained search warrants for Silva's residence and the automobile she drove from the laundromat. Robaina answered the door. During the search of the house the police did not find any drugs or drug paraphernalia, but they did seize cash, money receipts, and Silva's purse which contained an address book, additional cash, an assortment of other papers, and a note showing various names and dollar amounts. Among the papers was a receipt showing that Robaina had leased a second apartment in Rochester. The police searched that apartment, pursuant to a warrant, but found nothing. The apartment was vacant.

Two days later Silva contacted the Rochester police department and indicated that she and Robaina wanted to talk about the case. A detective arranged the interview. Robaina told the detective that he had just returned from visiting his family in Florida, a trip he made often. He denied any knowledge about the cocaine found in the laundry bag. The interview concluded after about an hour. There was no evidence to suggest that the investigation of Silva and Robaina continued after this interview. A short time later, Robaina and Silva moved from Rochester to Roseville in the St. Paul area.

Five months later, in March 1993, the St. Paul police received a tip from a confidential informant that Robaina and Silva were dealing large amounts of cocaine from their new residence in Roseville. Based upon the information from the informant, the St. Paul police obtained search warrants for the Roseville residence, Robaina's automobiles and for Robaina himself. Surveillance officers positioned outside the Roseville residence observed Robaina leaving the house in a car. The police officers stopped him. A uniformed officer approached Robaina's vehicle and observed him reaching toward his waist. The police officer removed him from the car and conducted a pat down search which uncovered a loaded .38 caliber revolver, extra bullets in Robaina's pant pocket, and three one-ounce packages of cocaine in his jacket pocket. The search of the Roseville residence uncovered 16 one-ounce packages of cocaine in a safe in the master bedroom closet, approximately $7,600 in cash in a man's leather coat in the master bedroom, a triple-beam balance scale in the hall closet, and a cellular telephone in another closet.

Robaina was charged in a five count indictment: Count I—conspiracy to possess with intent to distribute two kilograms of cocaine; Count II—aiding and abetting possession with intent to distribute two kilograms of cocaine; Count III—possession with intent to distribute three ounces of cocaine; Count IV—possession with intent to distribute 16 ounces of cocaine; and Count V—use of a firearm during and in relation to a drug trafficking crime.[2] The jury found Robaina guilty on all counts. Robaina's post-verdict motion for judgment of acquittal was denied by the district court. The district court sen-

---

**2.** Silva was charged with four counts of drug trafficking in violation of 21 U.S.C. § 846(a)(1). Those charges were dismissed in exchange for Silva's plea of guilty to one count of conspiracy to defraud the United States Internal Revenue Service in violation of 18 U.S.C. § 371.

tenced him to a total term of imprisonment of 144 months, followed by 4 years of supervised release. This appeal followed.

## II. JOINDER OF OFFENSES AND SEVERANCE

Robaina first argues that the district court erred in denying his motion to sever Count II—aiding and abetting possession with intent to distribute two kilograms of cocaine discovered in the laundry (the "laundromat cocaine")—from the other counts. He contends that the laundromat cocaine count was not related to the other counts and therefore should have been tried separately. The government argues that its decision to join the four drug trafficking offenses was proper because all the charges were the same or similar, and that evidence of the laundromat cocaine count overlapped with the evidence of the conspiracy count and the other substantive drug offenses. The government further argues that Robaina failed to demonstrate actual prejudice resulting from the joinder because the evidence of the laundromat cocaine count would have been admissible in a separate trial of the other drug offenses.

We begin by considering whether the counts were misjoined. Misjoinder is a question of law we review de novo. *United States v. Lane*, 474 U.S. 438, 449 n. 12, 106 S.Ct. 725, 732 n. 12, 88 L.Ed.2d 814 (1986); *United States v. Rimell*, 21 F.3d 281, 288 (8th Cir.1994). Joinder of offenses for trial is proper if the offenses alleged in the indictment are "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). In applying the "same or similar character" standard, we have found joinder of offenses to be proper when "the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *United States v. Shearer*, 606 F.2d 819, 820 (8th Cir.1979).

We hold Robaina's misjoinder claim is without merit. The six-month time period between the offenses in the present case does not violate the "relatively short period of time" factor espoused in *United States v. Shearer*. We have affirmed joinder of offenses in cases where the time period between offenses was even greater. *See United States v. Lindsey*, 782 F.2d 116 (8th Cir. 1986) (17 months); *United States v. Rodgers*, 732 F.2d 625 (1984) (20 months); *United States v. Hastings*, 577 F.2d 38 (8th Cir.1978) (2 years). In addition, we note that the laundromat cocaine count and the counts charging possession with intent to distribute cocaine found on Robaina's person and in his apartment are sufficiently similar to justify joinder. And, finally, the evidence of the laundromat cocaine count overlapped with the evidence of conspiracy. Accordingly, we conclude that the offenses were properly joined.

We next address whether the district court should have severed these counts under Fed. R.Crim.P. 14 which provides relief from joinder, notwithstanding propriety under Rule 8(a), if it results in undue prejudice to the defendant. A motion to sever is addressed to the sound discretion of the district court. *United States v. Rimell*, 21 F.3d at 289, *citing United States v. Mason*, 982 F.2d 325, 328 (8th Cir.1993). We hold that the district court did not abuse its discretion in denying severance.

In *United States v. Dennis*, 625 F.2d 782, 802 (8th Cir.1980) (citations omitted), we held that "[w]here evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together." The fact that Robaina was associated with a prior possession of a sizeable amount of cocaine would have been probative of his intent and possession on March 3, 1993. Moreover, the record indicates that the search warrant for Robaina's house, car and person was predicated on the police officer's knowledge that Robaina had previously been suspected of drug trafficking based upon the discovery of the laundromat cocaine. This evidence could have been introduced in a separate trial under Fed.R.Evid. 404(b) as a prior wrong or act to prove intent, motive, knowledge or common scheme or plan. We conclude, therefore,

that the district court did not abuse its discretion in refusing to sever the laundromat cocaine count.

## III. TESTIMONY OF DEFENSE WITNESSES

Robaina next argues that the district court improperly refused to allow testimony of proposed defense witnesses Felipe Lugo and his wife, Karen Ellingson, who were allegedly the only people who could corroborate his testimony that he did not have any intent to distribute cocaine and he only possessed the cocaine in order to help his friend, Lugo. Exclusion of this testimony, he claims, denied him his Sixth Amendment right to compulsory process. We disagree.

■ The Compulsory Process Clause of the Sixth Amendment guarantees a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Under Fed.R.Evid. 401, the district court has discretion in determining the relevancy and admissibility of evidence. *E.g., United States v. Briscoe,* 574 F.2d 406, 408 (8th Cir.1978) (per curiam). To establish a violation of the Compulsory Process Clause, a criminal defendant must make a plausible showing that the district court, without justification, "excluded the testimony of a witness that would have been *material* and *favorable* to his defense." *United States v. Valenzuela–Bernal,* 458 U.S. 858, 873, 102 S.Ct. 3440, 3449–50, 73 L.Ed.2d 1193 (1982) (emphasis added); *see also United States v. Peltier,* 585 F.2d 314, 331–32 (8th Cir.1978). We hold that the district court did not err in excluding this testimony because Robaina failed to establish that testimony by Lugo or Ellingson would have been material or favorable to his defense.

At trial, Robaina testified to the following: He first became involved with cocaine at the behest of his friend, Lugo. When Robaina moved to St. Paul in February 1993, Lugo solicited his assistance in solving Lugo's financial problem by selling cocaine. Lugo asked Robaina to purchase approximately one pound of cocaine for him to sell. After some deliberation, Robaina agreed to help Lugo "solve his problem." Robaina "fronted" Lugo one thousand dollars and traveled to Miami to purchase 19 ounces of cocaine, which he had sent back to him in Minnesota by overnight delivery. Robaina and Lugo purchased a triple-beam balance scale and weighed and packaged the cocaine. Robaina then relinquished possession of the cocaine to Lugo. Three days later Lugo asked Robaina to keep the cocaine at his house because Lugo feared that it would be stolen. Robaina put the packages of cocaine in his safe in the bedroom. Lugo also asked Robaina to deliver three ounces of cocaine to a customer who was waiting at Lugo's house. Robaina refused to deliver the cocaine, but agreed to give Lugo the three ounces. When Robaina returned from his bedroom with the three ounces, Lugo was gone. Robaina left his house driving his car in an attempt to catch Lugo to give him the cocaine when he was stopped by the police.

Lugo was subpoenaed as a witness by the defense. Prior to Robaina's testifying, Lugo appeared and was represented by counsel. The district court asked Lugo whether he intended to invoke his Fifth Amendment right against self-incrimination. Lugo indicated that he did. After an off-the-record discussion between Lugo's counsel and the prosecutor, the prosecutor informed the district court that Lugo could not provide any information favorable to Robaina and whatever knowledge he did have was potentially self-incriminating and he did not want to testify. Defense counsel then requested that either the prosecutor or the district court grant Lugo use immunity in order to compel his testimony. The prosecutor declined to offer immunity. The district court stated that it did not have the authority to grant immunity nor could it compel the prosecutor to grant immunity. The district court excused Lugo from testifying.

■ The district court's refusal to allow Lugo to testify did not violate Robaina's sixth amendment right to compulsory process. The defendant's right to compulsory process does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self incrimination. *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). Immunizing a witness who invokes his or her

Fifth Amendment rights can functionally preserve the privilege and clear the path for compulsory testimony. Immunity in the present case, however, was not available. The Supreme Court has held that statutory immunization of a witness, or use immunity, can only be granted upon the request of the Attorney General. *United States v. Doe*, 465 U.S. 605, 616, 104 S.Ct. 1237, 1244, 79 L.Ed.2d 552 (1984) ("We decline to extend the jurisdiction of courts to include the prospective grant of use immunity in the absence of the formal request that the statute requires."). "Judicial" immunity[3] has not been recognized in this Circuit. *See United States v. Doddington*, 822 F.2d 818, 821 n. 1 (8th Cir.1987).[4] Accordingly, the district court correctly stated that it had neither the authority to grant immunity itself nor could it order the government to grant Lugo immunity.

■ Karen Ellingson, Lugo's wife, was also subpoenaed as a witness for the defense. Ellingson informed the district court that she would not answer any questions about her husband because she had not consulted with an attorney. After hearing defense counsel's proposed line of questioning, the district court found that the questions lacked relevance and excused Ellingson from testifying. The district court was correct in excluding Ellingson's testimony under Fed.R.Evid. 403. Based upon the offer of proof, Ellingson's testimony was, at best, of minimal relevance.[5]

## IV. SUFFICIENCY OF THE EVIDENCE

Robaina next argues that there was insufficient evidence for a reasonable jury to find beyond a reasonable doubt that he conspired or aided and abetted in the possession of the laundromat cocaine. He argues that the laundromat cocaine was found in Silva's laundry, no drugs or paraphernalia were seized from either of the Rochester residences or the car, and he voluntarily presented himself for questioning by the police. In short, he contends that there is no evidence to demonstrate that he had knowledge of a conspiracy and, therefore, he could not have participated in one. The government argues that there was ample evidence in the record to support the jury verdict.

■ In reviewing a challenge for sufficiency of the evidence, we view the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences that support the jury verdict. *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992). "The verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt." *Id.* With regard to conspiracy convictions the evidence must demonstrate that the defendant entered into an agreement with one other person to violate the law. *United States v. Jones*, 23 F.3d 1407, 1409 (8th Cir.1994) (citations omitted). A conspiracy may be inferred from circumstantial evidence. *Id.*

■ We hold the evidence was sufficient to support the jury verdict finding Robaina guilty of conspiracy and of aiding and abet-

---

3. This concept arises from case law, which holds that a court possesses an inherent power to grant a witness use immunity in order to effectuate the defendant's compulsory process right to secure essential exculpatory testimony. *See Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976–77, 19 L.Ed.2d 1247 (1968); *Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980).

4. In *United States v. Hardrich*, 707 F.2d 992, 993–94 (8th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983), the court suggested that if the district court had the power to grant a reluctant defense witness judicial immunity, it would only be appropriate where the proffered testimony was clearly exculpatory. Applying the *Hardrich* rationale to the facts in the present case makes it clear that immunizing Lugo would not have been proper because he stated that he had no favorable testimony to offer on behalf of the defense.

5. Defense counsel made a proffer to the court that she needed Ellingson's testimony to:

[i]nquire as to Ms. Ellingson's employment, whether or not she's married, the name of her husband, whether or not her husband owns a Cadillac automobile, its color, license plate number, if she knows whether or not her husband was convicted of a felony in the state of Minnesota, and whether or not he is currently on probation or was on probation during 1992 or '93.

ting to possess the laundromat cocaine. There was evidence that two kilograms of cocaine were found in the family laundry, and a subsequent search of Robaina's home uncovered receipts for airplane tickets for travel between Florida and Minnesota and for rental cars. There was also evidence that, even though Robaina and Silva were unemployed, they were able to purchase various luxury items such as a $800 camcorder, several televisions, a pager, several jewelry items, additional money orders, a $400 dalmatian puppy, a stereo, and other electronic equipment. All of this evidence represents incriminating facts which the jury could have considered in convicting Robaina of conspiracy and drug trafficking. Other relevant evidence included a note showing various names and numbers, which the jury could have found was evidence of drug trafficking, and a receipt showing that Robaina had leased a second apartment, which could have been considered by the jury to be a "stash house" used by persons involved in drug trafficking. Furthermore, Robaina implicated himself by testifying at trial that he had traveled to Miami to procure 19 ounces of cocaine, had arranged for delivery of the cocaine to himself in Minnesota, had assisted Lugo in weighing and packaging it, and had kept it in a safe in his home. In addition, at the time of his arrest, Robaina was found in possession of three ounces of cocaine and a .38 caliber revolver. A search of his Roseville residence uncovered $7,641 in cash, a cellular phone, ammunition, 16 ounces of cocaine, and a triple-beam balance scale. After considering the evidence as a whole, we cannot say that the evidence was insufficient to support the jury verdict.

## V. CONCLUSION

Accordingly, we affirm the judgment of the district court.