# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2481

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri |
| Keith Bowling, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 9, 2001
Filed: January 29, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and JONES[1], District
    Judge.

_____

JONES, District Judge.

    Keith Bowling was convicted by a jury of conspiracy to possess with intent to
distribute in excess of fifty grams of cocaine base, in violation of 21 U.S.C. §§ 846 and

---

[1]The Honorable John B. Jones, United States District Judge, United States
District Court for the District of South Dakota, sitting by designation.

841(a)(1). The district court[2] sentenced Bowling to 151 months' imprisonment and five years' supervised release. Bowling challenges his conviction based upon violations of Bowling's Sixth Amendment rights to confrontation and compulsory process and sufficiency of the evidence. We affirm.

## I. BACKGROUND

Acting as a confidential informant, Sedell Small contacted Bowling in December 1997 in an attempt to purchase crack cocaine. In response to Small's inquiry, Bowling contacted Sara McCoy, who contacted Leatha Brown about purchasing nine ounces of crack cocaine. Some of the details of the purchase, including the quantity and price were agreed upon during a conference call between Bowling, McCoy and Brown. Brown, through her nephew, was the supplier of the crack cocaine at issue. During the conference call, it was agreed that Brown would sell nine ounces of crack cocaine for $7,500. The date, time and location of the transaction were agreed upon the day the transaction transpired.

Small informed Officer Garrett Burgess, a St. Louis City police officer, that a drug transaction would occur on December 22, 1997. Officer Burgess testified at Bowling's trial that Small advised him he had a friend named Keith who was going to orchestrate a nine-ounce deal of cocaine. The police directed Small to give a prearranged signal if he observed narcotics during the attempt to purchase crack cocaine. Small met Bowling at the prearranged Amoco Station on December 22, 1997, while police surveillance was in place. McCoy was a passenger in the front seat of Bowling's car at that time. Bowling exited the car and spoke with Small. Bowling then returned to the car and informed McCoy that Small wanted to view one ounce of the crack cocaine. McCoy telephoned Brown who agreed to show one ounce to Small. Bowling drove to Brown's apartment and picked her up. Upon arriving at the Amoco

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

Station for the second time, Bowling exited the car while McCoy and Brown remained in the car. Bowling had a brief conversation with Small outside the car and Small then entered Bowling's car. Small viewed the crack cocaine and returned it to McCoy. Small exited Bowling's car and Bowling got into the car with McCoy and Brown. Small signaled to police that he had observed narcotics and the police moved in to arrest Bowling, Small, McCoy and Brown. Immediately after the arrest, the police found 27.7 grams of crack cocaine in McCoy's pockets. Additional crack cocaine was seized during a search of Brown's apartment.

McCoy and Brown pled guilty and testified at Bowling's trial as witnesses for the government. Small did not testify as a witness for the government or the defense during trial because he asserted his Fifth Amendment privilege against self-incrimination. At the time of Bowling's trial, Small was under indictment for possessing with the intent to distribute crack cocaine on December 8, 1997. During its opening statement, the government informed the jury that Small was a fugitive and that if he was arrested he would testify as a witness for the government. Bowling contacted Small at Small's residence before trial and Small provided exculpatory statements during an interview with Bowling's attorney. Bowling asserts the government could have easily located Small to call him as a witness at Bowling's trial because Small lived at the same address for a lengthy period of time.

On the first day of trial, the marshals arrested Small on the indictment pending against him immediately after serving Small the subpoena from Bowling to testify on behalf of Bowling at trial. Counsel was appointed for Small and, through counsel, Small asserted his Fifth Amendment right against self-incrimination refusing to testify on behalf of either the government or Bowling during Bowling's trial. The government refused to grant restricted immunity relating to the December 22, 1997 incident. The district court refused Bowling's request that the court grant immunity to Small.

## II. DECISION

Bowling argues his Sixth Amendment rights to confrontation and compulsory process were violated by the district court's refusal to require Small to testify. Bowling further contends the district court should have compelled the government to request immunity for Small or the district court should have granted judicial immunity to Small and limited the examination of Small to the events for which Bowling was on trial. In the alternative, Bowling contends the district court should have stricken the hearsay testimony given by Officer Burgess and other witnesses regarding Small's oral statements to them. Finally, Bowling challenges the sufficiency of the evidence, contending the evidence did not establish that Bowling entered into a knowing agreement with any individual other than Small, the government informant.

Asserting a Sixth Amendment violation, Bowling argues the district court should have required Small to testify at Bowling's trial, despite Small's assertion of his Fifth Amendment right against self-incrimination. Bowling's Sixth Amendment right to compulsory process, however, does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self-incrimination. United States v. Carr, 67 F.3d 171, 176 (8th Cir. 1995), cert. denied, 516 U.S. 1182 (1996); United States v. Robaina, 39 F.3d 858, 862 (8th Cir. 1994).

Bowling contends the district court should have either required the government to grant immunity to Small or granted "judicial" immunity to Small. We reject Bowling's arguments. It is well settled that "use immunity can only be granted when it is formally requested by the Attorney General." United States v. Warfield, 97 F.3d 1014, 1020 (8th Cir. 1996), cert. denied, 520 U.S. 1110 (1997) (citing Robaina, 39 F.3d at 863). The district court, therefore, lacked authority to compel the government to request immunity for Small. Additionally, "'[t]he district court did not have the authority to grant [Small] immunity because this court has consistently refused to recognize the concept of judicial immunity.'" United States v. Ayers, 138 F.3d 360, 363 (8th Cir.), cert. denied, 525 U.S. 895 (1998) (quoting United States v. Stewart, 122

F.3d 625, 627 (8th Cir. 1997)).  The district court did not err in refusing to compel the government to request use immunity or to grant judicial immunity to Small.

Bowling asserts  Small's danger of self-incrimination was too remote to justify the assertion of his Fifth Amendment privilege.  We disagree.  "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."  Hoffman v. United States, 341 U.S. 479, 486-87 (1951).  The Fifth Amendment privilege protects a witness against "real dangers, not remote and speculative possibilities."  Zicarelli v.  New Jersey State Comm'n of Investigation, 406 U.S. 472, 478 (1972).  At the time of Bowling's trial, an indictment was pending against Small for possessing with intent to distribute crack cocaine a few weeks prior to the drug transaction involving Bowling, McCoy, Brown and Small.  Small's counsel represented to the district court that Small would assert the Fifth Amendment if called to testify during Bowling's trial.  Small's counsel further stated Small's testimony could not be sufficiently tailored in Bowling's trial to avoid corollary issues which would be dangerous to Small.  The district court concluded there was a real danger of Small incriminating himself if he were required to testify about the matters involved in Bowling's trial and the court refused to require Small to testify.  The possibility of Small's self-incrimination was not "remote or speculative," and the district court did not err in allowing Small to plead the Fifth Amendment.  See id.; Robaina, 39 F.3d at 862-63.

If the district court did not err in allowing Small to plead the Fifth Amendment, Bowling contends the court should have stricken, as inadmissible hearsay, Officer Burgess's and other witnesses' testimony regarding statements Small made to them. The district court ruled the challenged testimony was not inadmissible hearsay because the statements were not offered in evidence to prove the truth of the matter asserted. The district court held Small's statements were offered in evidence to establish the

reason that Officer Burgess and the other police officers were conducting surveillance of the Amoco Station where Small met Bowling, McCoy and Brown on December 22, 1997. We find no abuse of discretion in the district court's evidentiary decision. United States v. Wadena, 152 F.3d 831, 854 (8th Cir. 1998), cert. denied, 526 U.S. 1050 (1999) (stating we review for abuse of discretion the district court's decision whether certain evidence constituted inadmissible hearsay).

The final argument advanced by Bowling is that he is not guilty of conspiracy, as a matter of law, because the evidence did not establish he entered into an agreement to distribute crack cocaine with any individual other than Small, the police informant. In reviewing a challenge for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences that support the jury verdict. See United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998). We will reverse a conviction for insufficient evidence "only if a reasonable jury must have had a reasonable doubt that the elements of the crime were established." Id. (internal quotation marks and citations omitted). To support a conspiracy conviction, the evidence must establish that an agreement to violate the law was reached between the defendant and one other person. Robaina, 39 F.3d at 863. The evidence was sufficient to support the jury verdict finding Bowling guilty of conspiracy to possess with intent to distribute crack cocaine. McCoy testified she participated in a telephone conference call with Bowling, Brown and herself wherein all three participants agreed upon the price and quantity of crack cocaine to be distributed. There was further evidence that Bowling participated in the transaction by arranging the date and location of the sale, by driving McCoy and Brown to the Amoco Station and by communicating with Small before and during the transaction. Upon reviewing the evidence as a whole, we cannot say a reasonable jury must have had a reasonable doubt that the elements of conspiracy were established by the evidence.

The judgment is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.