# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

### No. 201700026

———————————————

### UNITED STATES OF AMERICA
Appellee

v.

### WILLIAM F. COWART, III
Hospitalman (E-3), U.S. Navy
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Jason L. Jones, JAGC, USN.
Convening Authority: Commander, Navy Region Southeast,
Jacksonville, FL.
Staff Judge Advocate's Recommendation: Commander George W.
Lucier, JAGC, USN.
For Appellant: Captain Andrew R. House, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Captain Brian L. Farrell, USMC.

———————————————

Decided 12 June 2018

———————————————

Before MARKS, JONES, and WOODARD, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

MARKS, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of two specifications of distributing child pornography and one specification of possessing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C.

§ 934.[1] The military judge sentenced the appellant to 48 months' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the punitive discharge, ordered it executed.

The appellant asserts one assignment of error. The military judge abused his discretion when he excluded evidence about a viable alternate suspect for the distribution of child pornography specifications. We find error, conclude it was not harmless beyond a reasonable doubt, and set aside the findings for Specifications 1 and 2 of the Charge and the sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The case against the appellant for distribution of child pornography is entirely circumstantial.

On 2 May 2012, the appellant boarded a plane in Japan, where he was stationed aboard USS BONHOMME RICHARD (LHD 6), and flew home to Newport, North Carolina, for about two-and-a-half weeks of leave. He spent most of his leave period at his parents' home, where family and friends came to visit him. On 20 May 2012, the appellant left his parents' home in North Carolina to return to his ship in Japan.

At the same time, an agent with the North Carolina Special Bureau of Investigations (SBI) was monitoring computer file sharing networks[2] for the electronic exchange of child pornography. On 8 May 2012, the agent discovered that a host computer at a particular internet protocol (IP) address had shared images of suspected child pornography between 3 and 8 May. The agent was able to determine that the host computer was using a particular version of a file sharing software to connect to a file sharing network under the user name "Okisama."[3] Between 8 and 9 May 2012, the agent's computer detected and downloaded 40 images of child pornography from the Okisama account. On 19 May 2012, six more files of child pornography came from the same source. The agent traced the IP address associated with the account to the appellant's parents' home. State records identified four individuals associated with the residence: the appellant's parents, the appellant, and the appellant's brother. SBI agents searched the appellant's parents' home in

---

[1] The military judge acquitted the appellant of one specification of possessing child pornography.

[2] The SBI agent defined "file sharing" networks as computer systems that are connected to each other directly via the Internet and can share files among them. Record at 82.

[3] *Id.* at 90.

June 2012 and conducted forensic previews of the computers in the house. They found neither child pornography nor file sharing software. The SBI agents then contacted the Naval Criminal Investigative Service (NCIS).

On 26 September 2012, NCIS special agents searched the appellant's berthing and work space aboard USS BONHOMME RICHARD, then pier-side in Guam, and seized all of his personal electronic devices. Forensic analysis yielded images and videos of child pornography on the appellant's cellular phone.[4] The appellant's laptop computer contained neither child pornography nor the file sharing software used to exchange the child pornography files in May 2012. An external hard drive contained some evidence of child pornography. Investigators found none of the files distributed in May 2012 on any of the appellant's devices. Finally, forensic analysis revealed the appellant's use of "Okisama"[5] as the password to his external hard drive[6] and the username associated with his Nintendo gaming system.[7]

## II. DISCUSSION

The appellant alleges that he was deprived of his constitutional right to present a complete defense. His defense relied primarily on evidence that an alternate suspect—his cousin, JC—may have been responsible for distributing the child pornography. The appellant asserts the military judge erroneously excluded testimony suggesting that JC possessed child pornography in 2010 and searched for it at the appellant's family home in 2006 or 2007.

We review a military judge's decision to exclude evidence for an abuse of discretion. *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004) (citing *United States v. Tanksley*, 54 M.J. 169, 175 (C.A.A.F. 2000)).

---

[4] Forensic investigators also found child pornography on the appellant's iPod, but the appellant was not charged with possessing child pornography on his iPod. The military judge admitted the child pornography found on the iPod only to rebut the defense's assertion that someone other than the appellant distributed the child pornography from his parents' home in May 2012.

[5] The meaning of "Okisama" did not appear in the record; however, testimony suggested it was related to the appellant's birthplace, Okinawa, Japan.

[6] Record at 207.

[7] *Id.* at 240.

**A.    Constitutional right to present "legally and logically relevant" evidence in defense**

"The right to present defense evidence tending to rebut an element of proof such as the identity of the perpetrator is a fundamental Constitutional right." *United States v. Woolheater*, 40 M.J. 170, 173 (C.M.A. 1994) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)). *See also United States v. Hennis*, 75 M.J. 796, 823 (A. Ct. Crim. App. 2016) (*en banc*) ("The right to obtain and present such 'third party culpability' evidence is an important component of an accused's right to present a defense."). In *Woolheater*, the defense sought to introduce evidence about Petty Officer Woolheater's shipmate to demonstrate that the shipmate had the opportunity, knowledge, and motive to commit the arson of which Petty Officer Woolheater was accused. *Id.* at 172. The Court of Military Appeals found that the military judge "erred when he ruled that the defense could not present *legally and logically relevant* evidence that someone else had the motive, knowledge, and opportunity to commit the arson." *Id.* at 173 (emphasis added). Later, in *United States v. Dimberio*, 56 M.J. 20, 24 (C.A.A.F. 2001), the Court of Appeals for the Armed Forces (CAAF) reiterated that the constitutional right to present a defense is the right to present "evidence which is legally and logically relevant."

**B.  The appellant's evidence of third-party culpability**

The appellant called a single witness—his father—to present his defense. Through his father's testimony, the appellant presented an alternate suspect who may have distributed the child pornography from his parents' IP address in May 2012. While the appellant was visiting his parents in North Carolina, family members and high school friends came to the house. Among the visitors was the appellant's cousin, JC. JC and the appellant were close, and JC had lived with the appellant and his family for a time in the past.

According to the appellant's father, JC spent the night at the house six or seven times during the appellant's visit and slept in the same room as the appellant. The father was not certain that JC was in the house during the early morning hours of 9 and 19 May when the child pornography was distributed. He remembered that "when my son first came in [JC] did come and stay with us for several days there[,]" but he testified only that JC "could have been there" at the hour the pornography was distributed on 9 May.[8] Midway through the leave period, the appellant and his father left the house to visit the appellant's grandfather for about a week. The appellant's father knew JC was in the house right before the appellant left on 20 May. He was

---

[8] *Id.* at 402.

certain that JC was in the house during the day on 19 May, but he did not know when he left that night. He did not know whether he was in the house at the hour the child pornography was distributed on 19 May.

But testimony about JC's presence in the family home in May 2012 is not the subject of the alleged error. Testimony about two prior incidents involving JC in the family's home is at issue.

### 1. *Report of JC's child pornography possession in 2010*

The appellant's father testified that in 2010, the appellant, JC, and a family friend, R, lived together in a trailer on the family's property. He recalled an incident when the appellant and R "came into the house very emotional, high attitude, they came to the back room and were just very upset."[9] The appellant and R were upset because "[t]hey had found disks of child pornography in [JC's] bedroom."[10] They insisted that JC move out of the trailer. The father explained that he did not report JC to law enforcement because JC is family, has special needs, and "needs someone to support him."[11]

Trial counsel objected to the father's testimony, citing relevance, evidence of other crimes, wrongs, or acts, and hearsay. Civilian defense counsel (CDC) responded:

> It goes to number one, access for other individuals that had potential access to the IP address that was identified and discussed by Agent [C]. Number two, it goes to the potential motive and opportunity of an alternative suspect other than Hospitalman Cowart.[12]

When asked to distinguish the evidence from improper character evidence, CDC explained, "it is an alternative, the theory of the defense case as the court has pointed out more than once is that there was potential opportunity, access and availability and potentially motivation for some other individual to access and distribute child pornography in May of 2012."[13]

CDC later reiterated his assertion that the evidence was admissible "under the alternative theory for showing someone else had access, opportunity, potential motivation and was around during the charged time

---

[9] *Id.* at 384.

[10] *Id.*

[11] *Id.* at 386.

[12] *Id.* at 388.

[13] *Id.* at 389.

frame."[14] Ruling from the bench, the military judge admitted the evidence that multiple people had access to the wireless network in the home at the time of the appellant's visit. But he excluded the evidence that JC possessed child pornography in 2010:

> [A]s to the past history and the stories, I am gonna sustain that part of the objection. It's too far. It's remote in time and it is character evidence brought to show that he acted in one way two years ago and then he acted in conformity therewith in May 2012. I think that's just character evidence in that regard.[15]

The military judge then allowed the CDC to proffer his second line of intended questioning of the appellant's father.

### 2. *Evidence of electronic searches for child pornography in 2006-07*

Before JC lived with the appellant in a trailer on the family's property, he lived with the appellant's parents in their house from 2006 to 2007. The record indicates JC was at least 16 years old at the time and likely older. The appellant's father initially allowed JC to borrow his computer but then withdrew that permission. After JC used the computer, the appellant's father saw "tracks of" child pornography.[16] He defined tracks of child pornography as pop-up advertisements to "'[c]lick here for underaged [sic] youth having sex'" and images of "kids running down a nude beach and that kind of stuff[.]"[17] As he had taken "on the burden of trying to take care of [JC,]" the appellant's father did not report the suspected child pornography but "did [his] best to clean it up."[18]

Trial counsel raised "the same objection" from the first line of questioning, and the military judge responded, "[s]ame ruling. Sustained."[19]

### C. MIL. R. EVID. 404(b), the *Reynolds* test, and legally and logically relevant evidence

Although CDC did not explicitly invoke MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), he sought admission of the testimony about JC's alleged prior acts to

---

[14] *Id.* at 390.

[15] *Id.* at 391-92.

[16] *Id.* at 393.

[17] *Id.*

[18] *Id.* at 394.

[19] *Id.* at 395.

demonstrate his motive and opportunity to distribute child pornography. Under MIL. R. EVID. 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But evidence of prior bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MIL. R. EVID. 404(b)(2). Typically, the government offers MIL. R. EVID. 404(b) evidence against an accused. In something of a reversal of roles, the appellant, not the government, proffered this MIL. R. EVID. 404(b) evidence. The evidence about JC's alleged prior acts was integral to the appellant's defense that someone else in the house had not only the opportunity but the motive to distribute child pornography in May 2012.[20]

By well-established precedent, military courts review the admissibility of MIL. R. EVID. 404(b) evidence via the *Reynolds* test:

1. Does the evidence reasonably support a finding by the court members that the appellant committed prior crimes, wrongs or acts?

2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?

3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?

*United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (internal citations omitted). Step two applies the standard for relevance in MIL. R. EVID. 401. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." MIL. R. EVID. 401. Step three incorporates the balancing test in MIL. R. EVID. 403, accounting for the

---

[20] Federal circuit courts often refer to FEDERAL RULE EVIDENCE (FED. R. EVID.) 404(b) evidence offered about someone *other than* the appellant as reverse 404(b) evidence. (With regard to the permitted uses of crimes, wrongs, or other acts, the language in FED. R. EVID. 404(b) and MIL. R. EVID. 404(b) is identical.) "'Reverse 404(b)' is a term some courts have used to refer to evidence of prior bad acts by a third party, introduced by the defendant and offered to implicate the third party in the charged crime." *United States v. Battle*, 774 F.3d 504, 512 (8th Cir. 2014) (citing *United States v. Myers*, 589 F.3d 117, 123 (4th Cir. 2009); *United States v. Montelongo*, 420 F.3d 1169, 1174 (10th Cir. 2005); *United States v. Seals*, 419 F.3d 600, 606 (7th Cir. 2005); *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004); *United States v. Hamilton*, 48 F.3d 149, 155 n.8 (5th Cir. 1995); *United States v. Spencer*, 1 F.3d 742, 750 n.5 (9th Cir. 1992) (Reinhardt, J., dissenting); *United States v. Stevens*, 935 F.2d 1380, 1401-02 (3d Cir. 1991)).

danger—to the appellant and the process—of "unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

When an accused introduces MIL. R. EVID. 404(b) evidence about someone else, the danger of unfair prejudice to the accused is minimal, if not non-existent. There is still the potential for danger to the process—threats to "policy considerations such as the interest in the orderly conduct at trials"—that may substantially outweigh the probative value of the evidence. *Woolheater*, 40 M.J. at 173 (citation omitted). Thus the third prong of the *Reynolds* test still applies to MIL. R. EVID. 404(b) evidence about a third party. But it is less likely that the prospect of unfair prejudice to the process alone will substantially outweigh the probative value of the evidence.

It is important to note that, by incorporating MIL. R. EVID. 401 and 403, the *Reynolds* test incorporates a determination of legal and logical relevance. "[MIL. R. EVID.] 401-404 set forth what is legally and logically relevant." *Dimberio*, 56 M.J. at 24. When conducted on behalf of the defense, *Reynolds* analysis of MIL. R. EVID. 404(b) evidence has constitutional implications. "[I]f the evidence is otherwise legally and logically relevant under Rules 401 through 403 the defendant has a constitutional right to introduce the evidence." *Id.* at 25.

As we review the military judge's exclusion of the defense's evidence about cousin JC, we look for the *Reynolds* analysis or some other application of MIL. R. EVID. 401 and 403.

**D. Military judge's exclusion of the appellant's 404(b) evidence**

"We review a military judge's evidentiary rulings for an abuse of discretion. However, when the judge does not articulate the balancing analysis on the record, we give the evidentiary ruling less deference than we do where . . . the balancing analysis is fully articulated on the record." *United States v. Dewrell*, 55 M.J. 131, 138 (C.A.A.F. 2001) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

The military judge ruled to exclude the appellant's MIL. R. EVID. 404(b) evidence about JC from the bench and did not reduce his ruling to writing. Review of the discourse between the military judge and counsel suggests that the military judge focused on the age of the evidence. The discussion began with trial counsel's objection to the father's testimony about the discovery of a disk containing child pornography in JC's room in the trailer.

> TC: He's testifying about hearsay, other crimes, wrongs or acts of another individual not [sic] disparate in time and place, well, not necessarily place, but time.

. . . .

MJ: And so therefore, [the hearsay objection] is overruled, but what's, you know, this is disparate in time with different people. I know the accused is slightly involved in this, but is this tied into what's going on here?

. . . .

CDC: It goes to number one, access for other individuals that had potential access to the IP address that was identified and discussed by [North Carolina SBI] Agent [C]. Number two, it goes to the potential motive and opportunity of an alternative suspect other than Hospitalman Cowart.

MJ: All right. But this doesn't seem to be like in May 2012, this is occurring. This seems to be occurring at a different time. I mean if this was May 2012, and there had been other contraband discovered there and people have taken steps to destroy it, these people would seem to be really tight close, but in May 2012, this isn't when this event occurs.

CDC: I think that the time that I would argue is that the same individual was involved. I agree we're talking about a two year discrepancy in time, but it's the same individual, in the same location, with the same access who was present during this time in May of 2012, so it's not like I'm saying he was there in May of 2000—or in 2010, and then he never came back. I mean this is the same individual that was in and around the charged premises in May of 2012.[21]

After the appellant's father testified about finding tracks of child pornography on his computer after JC borrowed it, the military judge asked one question: "What year is [he] living under your roof?"[22] The appellant's father answered that JC moved in with him around 2006 or 2007. The answer lent support to the military judge's earlier comment that the testimony concerned "past history."[23]

Without articulating relevance in terms of MIL. R. EVID. 401 or conducting a MIL. R. EVID. 403 balancing test on the record, the military judge excluded the testimony about JC because (1) it was improper character evidence, and (2) it was too remote in time.

---

[21] Record 387-89.

[22] *Id.* at 395.

[23] *Id.* at 391.

### 1. *Improper character evidence*

Although the appellant presented and proffered his father's testimony as evidence of motive and opportunity, the military judge characterized it as improper character evidence. "[T]his is a lot of character evidence coming in about this person trying to say they acted in conformity therewith. They did it once. They did it again."[24] The military judge explicitly anchored the discussion in MIL. R. EVID. 404(a)(1), which provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character trait[,]" and MIL. R. EVID. 405, which details methods of proving character.

But whether the father's testimony about JC was character evidence under MIL. R. EVID. 404(a) or evidence of prior acts under MIL. R. EVID. 404(b) was not the dispositive question. In *Dimberio*, the CAAF clarified that impermissible character evidence—"[s]uch evidence [that] would not fit within the exceptions to MIL. R. EVID. 404(a)"—might still be admissible because it is legally and logically relevant. 56 M.J. at 25. We turn next to legal and logical relevance and the judge's finding of remoteness.

### 2. *Remoteness*

It is well within a military judge's discretion to find that evidence of a third party's possible culpability is too remote to be admissible. The Supreme Court noted in *Holmes v. South Carolina*, 547 U.S. 319, 327 (2006), that judges may exclude evidence intended to shift suspicion to another suspect if it is too remote to be relevant. (Citing 41 C.J.S. HOMICIDE § 216 at 56-58 (1991) ("but frequently matters offered in evidence [by the accused to show another person's commission of the charged crime] are so *remote* and lack such connection with the crime that they are excluded") (emphasis added); 40A Am. Jur. 2d *Homicide* § 286 at 136-138 (1999) ("[evidence tending to prove that another person may have committed the crime with which the defendant is charged] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or *remote*") (emphasis added)). Remoteness equates to speculation or a lack of connection with the crime at issue.

Based on his focus on dates, the military judge appears to have found the evidence too remote in terms of time. He did not otherwise articulate why the evidence lacked probative value. The military judge only indicated that too much time had passed since JC was allegedly discovered searching for child pornography. Our superior court has considered temporal proximity in cases similar to the one before us, where evidence of child pornography has been

---

[24] *Id*. at 389.

admitted against an accused because it "could reasonably be viewed as reflecting or tending to reflect his sexual desires during the charged acts." *United States v. Mann*, 26 M.J. 1, 4 (C.M.A. 1988). *See also United States v. Whitner*, 51 M.J. 457, 461 (C.A.A.F. 1999) (affirming admission of evidence of the "appellant's possession of a large number of homosexual materials in his military barracks room on the day of the offense" to show his motive for committing the charged sexual assault of another man); *United States v. Orsburn*, 31 M.J. 182, 187 (C.M.A. 1990) (upholding the admissibility of pornographic materials about children which "were found at the situs of the alleged sexual offenses, around the time of these offenses, and in an area under at least partial control of the appellant"). *Cf United States v. Rhea*, 33 M.J. 413, 423 (C.M.A. 1991) (upholding the admissibility of pornographic books about children found near where the alleged sexual assaults of a child occurred without mentioning temporal proximity). Temporal proximity can constitute part of the connection between the evidence and the crime at issue.

But the case law does not require temporal proximity, particularly when the evidence demonstrates sexual interest in children. The government sought to introduce four- or five-year-old evidence against Staff Sergeant Mann to prove a common scheme or plan to sexually assault his children. 26 M.J. at 4. At trial, Staff Sergeant Mann unsuccessfully objected to admission of these acts, arguing they "were not 'close enough in time, place and circumstances to be relevant[.]'" *Id.* The Air Force Court of Military Review found the military judge abused his discretion in admitting the testimony. *United States v. Mann*, 21 M.J. 706, 710 (A.F.C.M.R. 1985). On appeal, the Court of Military Appeals disagreed. 26 M.J. at 5. "The apparent remoteness of some of these acts (5 years) does not undermine their relevance where the youth of the victim is an important component of the averred plan." *Id.* (citing *United States v. Burkett*, 821 F.2d 1306, 1309-10 (8th Cir. 1987) (holding "there is no specific number of years beyond which prior acts are no longer relevant to the issue of intent")).

Finally, temporal proximity is but one factor in a MIL. R. EVID. 403 balancing test. *See United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000) (listing temporal proximity as one of nine "factors to be examined when conducting a [MIL. R. EVID. 403] balancing test"). *See also United States v. Berry*, 61 M.J. 91, 96 (C.A.A.F. 2005) (noting, in the course of a *Wright* analysis, that "[t]he length of time between the events alone is generally not enough to make a determination as to the admissibility of the testimony"). Instead of considering temporal proximity while conducting a balancing test, the military judge substituted a test for remoteness. He never identified the potential danger to the fact-finding process that substantially outweighed the probative value of the evidence. As he made a binary determination of temporal proximity in lieu of a *Reynolds* analysis or MIL. R. EVID. 403

balancing test and failed to articulate further how the father's testimony was not legally and logically relevant, we find legal error.

## E. Admissibility of the appellant's 404(b) evidence under *Reynolds*

Before we determine whether the military judge's legal error amounted to an abuse of discretion, we will determine whether the excluded evidence was admissible. Thus we apply the *Reynolds* test to the father's testimony about JC.

### 1. *Report of JC's child pornography possession in 2010*

The appellant sought to admit evidence that JC possessed child pornography in 2010, but it was hearsay. The appellant's father never saw the disk which allegedly contained child pornography. He testified only to what the appellant and R reported to him. The military judge did not abuse his discretion by admitting the testimony only for its "effect on the listener."[25] If we are unable to consider the father's testimony as substantive evidence that JC possessed disks of child pornography in the trailer in 2010, we end our *Reynolds* analysis of this evidence at step one. We cannot find that "the evidence reasonably support[s] a finding . . . that [JC] committed [the] prior crimes, wrongs, or acts." 29 M.J. at 109. The military judge did not abuse his discretion in excluding this evidence.

### 2. *Evidence of electronic searches for child pornography in 2006-07*

The appellant's father proffered that he personally observed evidence of child pornography on his computer after JC used it in his home in 2006 or 2007.

First, the evidence reasonably supports a finding that JC committed the prior crime, wrong, or act. *Id.* "[T]he standard for meeting this factor is quite low." *United States v. Dorsey,* 38 M.J. 244, 246 (C.M.A. 1993). The appellant's father described with particularity pop-up advertisements for "'underaged

---

[25] *Id.* at 388. However, the evidence suggests that an exception to the hearsay rule may have applied, and the statements may have been admissible under MIL. R. EVID. 803(2) as excited utterances. Had the statements been admitted, they would have reasonably supported a finding that JC possessed child pornography in 2010 while living with the appellant on his parents' property. JC's possession of child pornography would make it more probable that he had a motive to distribute child pornography in May 2012. Even with the testimony necessary to determine whether the statements met the hearsay exception for excited utterances, danger to the court-martial process in terms of confusing the issues, misleading the military judge, undue delay, wasting time, or needlessly presenting cumulative evidence would not have substantially outweighed the probative value of the evidence. The evidence would have been admissible. *Reynolds*, 29 M.J. at 109; MIL. R. EVID. 403.

youth having sex'" and images of children on a nude beach.[26] We can reasonably infer that they resulted from recent electronic searches related to children, nudity, and sex on the same computer. He did not explain with particularity why he attributed the searches to JC as opposed to anyone else with access to his computer. The evidence is circumstantial. But given the low standard, we find the evidence meets the first prong of the test.

Next, we determine "what 'fact . . . of consequence' is made 'more' or 'less probable' by the existence of this evidence." *Reynolds*, 29 M.J. 109. We consider this question in the context of the government's entirely circumstantial case against the appellant for distribution of child pornography. The direct evidence established only that someone distributed child pornography via the IP address registered to the appellant's father in May 2012.

Investigators began their search for the distributor by forensically examining all of the computers in the home. When they found no evidence of child pornography or the file sharing software they moved to their next possible suspect. As the appellant was the only person associated with the residence not home at the time of the search, the North Carolina investigators contacted NCIS. There is no evidence the North Carolina SBI continued their investigation or that anyone searched JC's computer or electronic devices. NCIS found child pornography on the appellant's cell phone and iPod and discovered that he used the profile name "Okisama." Aside from the Okisama connection, the only evidence against the appellant was his interest in child pornography. He possessed none of the distributed images. There was no evidence of child pornography or the file sharing software on his laptop computer. Evidence that, on at least one prior occasion, JC had borrowed his uncle's computer and may have used it to search for child pornography on his wireless network is evidence that JC had the same motive and opportunity to distribute child pornography when he returned to the home in May 2012.

Admittedly, the passage of five or six years from the time JC allegedly searched for child pornography to the distribution at issue weakens the probative value of the evidence. But we do not find that temporal attenuation fatal to the admissibility of this evidence in this case. *See Berry*, 61 M.J. at 96; *Wright*, 53 M.J. at 482; *Mann*, 26 M.J. at 5. There is a sufficient nexus between JC's willingness to search for child pornography while a guest of the appellant's family five or six years earlier and his return to the house as a guest in May 2012. This evidence has some probative value as to the matter at issue in this case—the identity of the distributor of child pornography.

---

[26] Record at 393.

Finally, "is the 'probative value . . . substantially outweighed by the danger of unfair prejudice?'" *Reynolds*, 29 M.J. 109. In short, no. There is no risk of unfair prejudice to the appellant. Evidence that someone other than the appellant may have searched for and viewed child pornography is not likely to confuse the issues, particularly when the fact finder is the military judge. Nor was there any danger that the fact-finder would be misled. There was no undue delay, because the appellant's father had already succinctly testified to the evidence at issue. There were no other witnesses, no evidentiary exhibits, and no expert witnesses needed to interpret exhibits. There was also no prospect of needlessly cumulative evidence, as this was the only evidence that JC, or anyone else in the home, had shown an interest in child pornography. Finding no danger of unfair prejudice, we conclude that it did not substantially outweigh the probative value of the evidence.

Thus we find that the testimony that JC may have searched for child pornography on the same home network five or six years earlier was admissible under MIL. R. EVID. 404(b). It was legally and logically relevant. The military judge's legal error in failing to analyze the evidence in accordance with MIL. R. EVID. 401 and 403 and the *Reynolds* test and in excluding the evidence as improper character evidence and too remote in time constituted an abuse of discretion.

## F. Prejudice

As previously stated, "[t]he right to present defense evidence tending to rebut an element of proof such as the identity of the perpetrator is a fundamental Constitutional right." *Woolheater*, 40 M.J. at 173 (citations omitted). As long as "the evidence is otherwise legally and logically relevant under [MIL. R. EVID.] 401 through 403 the defendant has a constitutional right to introduce the evidence." *Dimberio*, 56 M.J. at 25. An appellant has the burden of establishing that an erroneous exclusion deprived him or her of evidence "'material and favorable to his defense'" and thus amounted to constitutional error. *United States v. Toohey*, 63 M.J. 353, 357 (C.A.A.F. 2006) (quoting *United States v. Robaina*, 39 F.3d 858, 862 (8th Cir. 1994)) (additional citations omitted).

The appellant's sole defense to the distribution charge was evidence that JC also had the opportunity and motive to distribute child pornography in May 2012. Exclusion of that evidence left the appellant with nothing more than a house full of people with the opportunity to distribute child pornography but no apparent motive to do so. The military judge's abuse of discretion improperly deprived the appellant of evidence "material and favorable to his defense[.]" *Id.*

As there was a constitutional dimension to the military judge's error, the government must prove that it was harmless beyond a reasonable doubt.

*United States v. Hall*, 56 M.J. 432, 436 (C.A.A.F. 2002) ("For constitutional errors, the government must persuade this court that the error was harmless beyond a reasonable doubt.") Declining to acknowledge the possibility of constitutional error in this case, the government has failed to do so. Contrary to the government's characterizations, the circumstantial case against the appellant for distribution of child pornography was not overwhelming. Although the appellant possessed child pornography, he possessed none of the distributed child pornography or the file sharing software. The only direct link between the appellant and the distribution detected by the North Carolina SBI was the moniker "Okisama."

We must also assess the possible prejudice of this exclusion in light of the military judge's subsequent admission of similar MIL. R. EVID. 404(b) evidence *against* the appellant on rebuttal. As part of the government's case in rebuttal, trial counsel asked the military judge to re-examine admission of the appellant's iPod under MIL. R. EVID. 404(b). The appellant's iPod, seized among his belongings on the ship, contained three uncharged files of child pornography.[27] The military judge had initially excluded it from evidence based on insufficient notice to the appellant under MIL. R. EVID. 404(b) and a lack of connection to the distribution of child pornography. Ironically, the military judge later ruled the evidence was admissible to rebut the appellant's theory of an alternate suspect.

In this ruling, the military judge correctly noted that "MIL. R. EVID. 404(b) is an evidentiary rule of inclusion [and] the applicable test is derived under *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989)."[28] The military judge found the MIL. R. EVID. 404(b) bases of motive and identity to be "inexorably intertwined" and "interconnected with the idea that the accused is the source of distribution."[29] The military judge noted that "[s]everal military cases deal with sexual preference of an accused and sexually related items possessed by an accused."[30] He relied on *Whitner* and *Mann*. Finding that the appellant brought his iPod home on leave with him in May 2012, the military judge held that "[t]he possession of the IPod [sic] images of child pornography by the accused provides a motive to be involved in the distribution and possession of images that were distributed in [this case.]"[31]

---

[27] Charges against the appellant for possession of child pornography stemmed from files found on a mobile phone and external hard drive.

[28] Record at 449; Appellate Exhibit (AE) XXIII at 3.

[29] AE XXIII at 4, 5.

[30] *Id.* at 4.

[31] *Id.* at 6.

The military judge's ruling admitting the evidence to rebut the appellant's defense best captures the significance of the defense evidence he excluded:

> This motive to be involved in child pornography internet activity goes toward rebutting the defense evidence of a third party being responsible for the distribution. All persons are considered innocent and all possible persons of interest in the Cowart home began the case on an equal evidentiary plane. The defense argument is that a third party distributed the evidence and the accused's possession of the Ipod images provides the fact-finder with a marker that differentiates him from all others. This is fact of consequence that is made more or less probable by the existence of this evidence and it goes to attempting to limit the identities of a possible distributor.[32]

Evidence that JC also had the "marker"—the same sexual interest—upends the equal evidentiary plane. It negates the differentiation the government relied on to prove its case.

The military judge's erroneous and asymmetrical application of MIL. R. EVID. 404(b) improperly excluded evidence of an alternate perpetrator that was material and favorable to the appellant's defense. The prejudicial impact of that error was exacerbated by the military judge's subsequent ruling allowing the government to introduce similar evidence to rebut the defense. Thus, exclusion of evidence implicating JC was not harmless beyond a reasonable doubt in this case and constituted an error materially prejudicial to the substantial rights of the appellant. Art. 59(a), UCMJ.

### III. CONCLUSION

The findings of guilty to Specifications 1 and 2 of the Charge and the sentence are set aside. The findings as to the Charge and Specification 4 thereunder are affirmed. The record of trial is returned to the Judge Advocate General of the Navy for remand to an appropriate convening authority with a rehearing authorized.

For the Court

R.H. TROIDL
Clerk of Court



---

[32] AE XXIII at 7.